**Cleve CANHAM, Plaintiff-Appellant,**

*v.*

**OBERLIN COLLEGE,
Defendant-Appellee.**

**No. 80–3186.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 14, 1981.

Decided Dec. 22, 1981.

Daniel C. Turoff and Alan S. Belkin, Shapiro, Turoff & Gisser, Cleveland, Ohio, for plaintiff-appellant.

Scribner L. Fauver, Fauver & Fauver, Elyria, Ohio, Michael R. Gallagher, James G. Gowan and Virginia Reichard, Cleveland, Ohio, for defendant-appellee.

Before MERRITT and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

Appellant Cleve Canham, a white male, filed this action alleging that appellee, Oberlin College, discriminated against him on account of his sex when it refused to hire him for the position of Assistant Editor of Oberlin's *Alumni Magazine.* The district court found that Oberlin had articulated legitimate, non-discriminatory reasons for not hiring the appellant and that appellant had failed to prove that these reasons were a pretext for sex discrimination. We affirm.

Appellant Canham first applied for the job of assistant editor in the fall of 1974, after his wife informed him that the College was advertising for the position on one of its bulletin boards. Canham previously had worked on several newspapers but at that time was unemployed and looking for work in the Oberlin, Ohio, area. The advertisement listed as qualifications a bachelor's degree, the ability to use an electric typewriter and familiarity with the College's organization, administration, history, personalities and campus politics. The advertisement also stated that the new assistant editor's duties would include proofreading, layout, interviewing and writing feature articles, class notes and obituaries.

On the basis of his written application, appellant was invited to an interview by Philip Tear, Editor of the *Alumni Magazine.* After this interview Mr. Tear rated the appellant as his first choice among all the applicants for the job, largely because of the appellant's journalism experience. He submitted his recommendation to the personnel department but received a negative review from the affirmative action officer, Ms. Karen Gorsline. In an interoffice memorandum, Ms. Gorsline reminded Mr. Tear that the College had established an affirmative action goal to recruit and hire, if possible, minority candidates in the College's *Alumni Magazine* office, due to the considerable disparity between the percentage of minority group members in the local population and the percentage holding ad-

ministrative and technical positions in the College. The memorandum also noted that a black female candidate, Ms. Chaille Maddox, who ranked second on the list, appeared to be equally well or even better qualified than the appellant. Although she did not have as much journalism experience as appellant, she did have an extensive familiarity with Oberlin College, which the appellant lacked. Ms. Gorsline's memorandum concluded that "the principles of Affirmative Action require that where two candidates are equally well qualified by criteria set by the recruiter and under an Affirmative Action goal, that [sic] the woman or minority is to be given preference." Ms. Gorsline thus rejected Tear's recommendation, but invited him to inform the personnel office if he had omitted any pertinent information on the forms submitted to the office.

Rather than reject the application of appellant and hire Ms. Maddox, Mr. Tear received permission to hire both the appellant and Ms. Maddox on a temporary, trial basis in early December 1974. Because Ms. Maddox had another temporary job that occupied most of her time, appellant functioned as a virtual full time assistant to Mr. Tear from December 1974 through February 1975.

During Canham's tenure as assistant editor, Mr. Tear apparently became disenchanted with Canham's performance of the job. Mr. Tear testified that the appellant did not take very well to the mundane and often monotonous tasks of writing obituaries and class notes, and that he, Tear, found himself rewriting much of his assistant's work. Mr. Tear concluded that the appellant's journalism experience may have been more of an over qualification than a qualification, in view of the tedious nature of the duties of the assistant.

In February 1975, Tear drew up a new ranking of candidates for the position. He dropped appellant Canham to fourth on the list, elevated Ms. Maddox, his former second choice, to first choice and promoted two other females to second and third place, ahead of the appellant. Each of these female candidates, like Ms. Maddox, had the additional desired qualification of familiarity with Oberlin College.

Ms. Maddox then was offered the job but refused it. The second candidate on the list, a white female, was offered the job and accepted, whereupon appellant's application was formally rejected.

Appellant then filed a complaint with the EEOC, and upon receiving a right to sue letter, filed this timely action in the district court, claiming that the college discriminated against him because of his sex, and that the college's affirmative action program was unlawful as applied to his case.

Appellant's allegations amount to a claim of disparate treatment, which in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), was declared unlawful under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* The district court found that the appellant did not establish a prima facie case because he was not a member of a minority group and because he had been found to be unqualified for the position after his trial employment. The court went on to conclude, however, that even if the appellant had established a prima facie case, the defendant had succeeded in rebutting the inference of discrimination, and the appellant had failed to show that the college's asserted reasons were pretextual.

In a recent decision clarifying the allocation of the burden of proof in disparate treatment cases, the Supreme Court has described the prima facie case of the plaintiff in this manner:

> The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.

(Footnote omitted.) *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

The Court also footnoted the *McDonnell-Douglas* formulation:

In *McDonnell Douglas, supra,* we described an appropriate model for a prima facie case of racial discrimination. The plaintiff must show:

"(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S., at 802 [93 S.Ct. at 1824].

We added, however, that this standard is not inflexible, as "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect in differing factual situations." *Id.,* at 802, n. 13 [93 S.Ct. at 1824, n. 13].

In the instant case, it is not seriously contested that respondent has proved a prima facie case. She showed that she was a qualified woman who sought an available position, but the position was left open for several months before she finally was rejected in favor of a male, Walz, who had been under her supervision. *Id.* 253–54, n. 6 [101 S.Ct. 1093, 1094, n. 6].

For purposes of this opinion we assume, but do not decide, that appellant has stated a prima facie case of disparate treatment.

■ Once a plaintiff establishes his prima facie case:

The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.

*Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1094.

The Supreme Court has defined the defendant's burden in these terms:

To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.

(Footnotes omitted.) *Id.* at 255, 101 S.Ct. at 1094.

■ The district court found that Oberlin's decision not to hire the appellant was based on his unsatisfactory performance during the trial period of December 1974–February 1975. The court also found that appellant's journalism experience may have rendered him over qualified, rather than qualified, for the job, and that the other candidates possessed an important qualification, familiarity with the Oberlin campus, which the appellant did not have.

These findings support the decision of the district court that the College acted upon legitimate, nondiscriminatory reasons, and not upon discriminatory intent, in its decision not to hire the appellant. Essentially, the record shows that the trial employment of appellant was terminated for cause and not for any intention to discriminate against him because of his sex.

The appellee Oberlin College carried its burden of proof under *Burdine, supra,* to articulate a legitimate, nondiscriminatory reason when it offered these reasons—appellant's unsatisfactory trial performance and the other candidates' additional qualifications—in explanation of its refusal to hire the appellant. The burden then shifted back to appellant .

* * * to demonstrate that the proffered reason was not the true reason for the employment decision. * * * [He] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Burdine, supra,* 450 U.S. at 256, 101 S.Ct. at 1095.

When the district court found that the College actually based its decision on the proffered reasons, this finding effectively negatived any contention by the appellant that these reasons were pretextual or discriminatory. The plaintiff bears at all time the burden of persuasion, *Burdine, supra,* 450 U.S. at 256, 101 S.Ct. at 1095. Appellant failed to persuade the district court that the College's asserted reasons were pretextual or its motivation discriminatory. The appellant has failed to persuade us that the findings of fact of the district court are clearly erroneous. Fed.R.Civ.P. 52(a).

The appellant also contends that the College's affirmative action program was unlawful as applied in his case. Because we agree with the district court that the employment decision took place in February 1975, after appellant's unsatisfactory trial employment, and not in December 1974, when the personnel office disapproved Mr. Tear's original ranking of the candidates, we conclude that the decision was based on the College's assessment of the relative qualifications of the candidates, and not on a desire to implement its affirmative action goals at the expense of the appellant. "[T]he employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Burdine, supra,* 450 U.S. at 259, 101 S.Ct. at 1096. The employer has a similar discretion to choose among candidates with different but equally desirable qualifications. Therefore, it is not necessary to decide whether the alleged implementation of affirmative action goals as characterized by the appellant in his brief would be unaccceptable under Title VII.

The judgment of the district court is affirmed.