Frank **CERRATO**, Plaintiff–Appellant,

v.

**SAN FRANCISCO COMMUNITY COLLEGE DISTRICT, et al.,** Defendants–Appellees.

No. 92–15747.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted August 13, 1993.

Decided June 16, 1994.

Roger B. Pool, Farella, Braun & Martel, San Francisco, CA, for plaintiff-appellant.

Charles S. Redfield, Low, Ball & Lynch, San Francisco, CA, for defendants-appellees.

* The Honorable Robert R. Merhige, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Before: REINHARDT, LEAVY, Circuit Judges, and MERHIGE, Senior District Judge.*

Opinion by Judge REINHARDT.

REINHARDT, Circuit Judge:

## I. INTRODUCTION

This case involves a civil-rights suit by plaintiff-appellant Frank Cerrato, a white mathematics professor at San Francisco Community College ("SFCC") who had applied for—and was denied—an appointment to Dean I of Instruction. Cerrato contends that the SFCC district, chancellor, and board[1] illegally discriminated against him by hiring Bennett Tom, an Asian–American administrator, for that position. Cerrato also contends that Tom illegally discriminated against him by tampering with the job requirements for Dean I of Instruction.

The jury found for the defendants on most of Cerrato's claims. The district court then entered judgment in favor of the defendants on all but four of the remaining federal claims, and it remanded the remaining state claims to state court. Cerrato subsequently dismissed the federal claims without prejudice. We affirm the district court's judgment.

## II. FACTS

In May 1984, the SFCC district posted a job opening for Dean I of Instruction for Math–Science, which required three years of full-time college teaching experience. Cerrato applied for the job, but the opening was withdrawn for budgetary reasons.

In October 1984, a new job opening for Dean I of Instruction was posted. This opening did not require the full-time teaching experience nor expertise in any area. Instead, it required significant administrative experience on the community college level.

1. Defendants Ernest Ayala, Timothy Wolfred, Amos Brown, Robert Burton, Julie Tang, and Alan Wong.

Cerrato and Tom applied for the job, among others.

A screening committee selected Jacqueline Green, Tom, and a third candidate as the top three finalists. The committee decided to recommend Green and Tom, but reconsidered the third candidate in light of the narrow spread between the third candidate and the other candidates. Upon revoting, the committee chose Cerrato instead of the third candidate. The members of the screening committee testified that race was not considered in the ranking process.

A second committee appointed by Carlos Ramirez, the SFCC president, then ranked Cerrato first, Green second, and Tom third. This advisory committee declared all three candidates to be qualified. The members of the advisory committee also testified that race was not considered in the ranking process. Ramirez adopted the recommendations of the committee and forwarded them to the SFCC chancellor.

Upon receiving the advisory committee's rankings, the chancellor, Hilary Hsu, personally interviewed all three candidates. Hsu ultimately ranked Tom first, Green second, and Cerrato third. He testified that he based his decision on several reasons, none of which involved race: First, Tom was the only finalist with a doctorate degree.[2] Second, Tom had served as an associate director at

SFCC for six years, which was an equivalent position to Dean I of Instruction.[3] Third, Tom had valuable experience with collective bargaining and other labor matters. Fourth, Tom's appointment would save the district money because Tom's existing position would be eliminated. Fifth, Tom's appointment would help heal the rift between two rival divisions of SFCC, a rift that SFCC's accrediting organization had commented upon adversely in the past.

By contrast, factors in Cerrato's favor included his experience as a full-time mathematics professor at the college for twenty years and his service as department chair for two years. The position of department chair was not an equivalent position to Dean I of Instruction, however, and Cerrato had had no administrative experience on the district level.

Cerrato sued the district, the chancellor, Tom, and six board members for discrimination under 42 U.S.C. §§ 1981,[4] 1983,[5] 1985,[6] 1986;[7] Title VII of the Civil Rights Act of 1964;[8] and California antidiscrimination,[9] breach of contract, and anticonspiracy laws. After a two-month trial, the jury decided in favor of the defendants on most of the claims. The district court ruled in favor of all defendants on the Title VII claims. It then entered judgment in favor of the defendants on all but four of the remaining federal claims,[10]

2. In addition to his doctorate in educational administration from the University of Southern California, Tom had earned a bachelor's degree in biological sciences from the University of California at Santa Barbara, and a secondary school teaching credential and master's degree in educational administration from San Francisco State University.

 With respect to teaching experience, Tom has taught at the University of California at Berkeley, San Francisco State University, and San Francisco Community College.

3. The job of associate director included scheduling over 100 instructors, handling budgets, providing training and teaching support, and participating on special SFCC committees and projects.

4. Section 1981 prohibits racial discrimination by private actors. See 42 U.S.C. § 1981.

5. Section 1983 authorizes a remedy against state actors for constitutional violations, including violations of the Equal Protection Clause. See 42 U.S.C. § 1983.

6. Section 1985 authorizes a remedy against state actors who have conspired to deprive an individual of his civil rights. See 42 U.S.C. § 1985.

7. Section 1986 authorizes a remedy against state actors who have negligently failed to prevent a conspiracy that would be actionable under § 1985. See 42 U.S.C. § 1986.

8. Title VII prohibits discrimination in the workplace by employers. See 42 U.S.C. §§ 2000e et seq.

9. See Cal.Gov't Code §§ 12920 et seq. (Deering 1982 & Supp.1993).

10. The four claims were the district's liability under section 1981, the district's liability under section 1983, the chancellor's liability under section 1981, and the chancellor's liability under section 1983.

and it remanded the remaining state claims to state court. Cerrato later dismissed the last four federal claims without prejudice.[11]

## III. DISCUSSION

### A. Section 1981

■ Cerrato argues that the district court erred in disposing of his 42 U.S.C. § 1981 claims.[12] In particular, Cerrato argues that the district court should have granted him judgment as a matter of law ("JNOV") with respect to defendants Tom, Wolfred, Brown, Ayala, and Burton. Cerrato also argues that the district court erred in granting judgment notwithstanding the jury's failure to agree ("JN–AGREE")[13] in favor of defendants Tang and Wong.

■ Because 42 U.S.C. § 1983 provides an exclusive remedy for violation by state governmental units of the rights guaranteed in section 1981, our conclusion as to Cerrato's section 1983 claims constitutes an adjudication of his section 1981 claims. *See, e.g., Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Because all of the defendants in this case are state actors and the complaint includes a section 1983 claim covering the same factual matters, we dismiss Cerrato's section 1981 claims.

### B. Section 1983

Cerrato argues that the district court erred in disposing of his 42 U.S.C. § 1983 claims.[14] Specifically, Cerrato argues that the district court should have granted him

JNOV with respect to defendants Tom, Wolfred, Brown, Ayala, and Burton. He also argues that the district court erred in granting JN–AGREE in favor of defendants Tang and Wong.

*1. Jurisdiction.* As a threshold matter, the defendants argue that the Eleventh Amendment bars this court from hearing Cerrato's section 1983 claims. They argue that such a result is compelled by *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198 (9th Cir.1988), *cert. denied*, 490 U.S. 1081, 109 S.Ct. 2102, 104 L.Ed.2d 663 (1989), in which we held that a California community college school district was a state entity that possessed Eleventh Amendment immunity from section 1983 claims. *See id.* at 201–02.

■ We agree with the defendants that the Eleventh Amendment bars us from hearing Cerrato's claims against the SFCC district. In general, the Eleventh Amendment bars a federal court from hearing claims by a citizen against dependent instrumentalities of the state. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). We have held that community college districts are dependent instrumentalities of the state of California. *See Mitchell*, 861 F.2d at 201–02. Accordingly, we lack jurisdiction to hear Cerrato's claims against the district.[15]

■ We have jurisdiction, however, to hear Cerrato's section 1983 claims against the other defendants—in their official capaci-

---

**11.** For a more detailed summary of the outcome for each claim in district court, see the Appendix at p. 977, below.

**12.** With respect to Cerrato's section 1981 claims, the jury decided in favor of defendants Tom, Wolfred, Brown, Ayala, and Burton. The jury could not reach a verdict with respect to defendants SFCC district, Hsu, Tang, and Wong. Of those four defendants, the district court granted JN–AGREE in favor of Tang and Wong. Cerrato then agreed to dismiss the SFCC district and Hsu without prejudice.

**13.** For purposes of this opinion, we adopt the district court's and parties' use of the terms "JNOV" and "JN–AGREE." Under the current rules, however, the proper term for both is an "entry of judgment as a matter of law." *See* Fed.R.Civ.Pro. 50(b).

**14.** With respect to Cerrato's section 1983 claims, the jury decided in favor of defendants Tom, Wolfred, Brown, Ayala, and Burton. The jury could not reach a verdict with respect to defendants SFCC district, Hsu, Tang, and Wong. Of those four defendants, the district court granted JN–AGREE in favor of Tang and Wong. Cerrato subsequently dismissed the SFCC district and Hsu without prejudice.

**15.** Cerrato urges us to overrule circuit precedent with respect to this issue. In the absence of an en banc reversal or an intervening Supreme Court decision, however, we are bound by circuit law. *See Atonio v. Wards Cove Packing Co., Inc.*, 810 F.2d 1477, 1478–79 (9th Cir.1987), *rev'd on other grounds*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989).

ties—for prospective injunctive relief. It is well established that the Eleventh Amendment does not bar a federal court from granting prospective injunctive relief against an officer of the state who acts outside the bounds of his authority. This principle was announced by the Supreme Court well before *Mitchell, see, e.g., Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and has been reaffirmed since, *see, e.g., Missouri v. Jenkins,* 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). Accordingly, we may hear Cerrato's section 1983 claim to the extent that he asks for prospective injunctive relief from the other defendants in their official capacities (e.g., the enjoining of the SFCC affirmative action plan, the prospective hiring of Cerrato, etc.).

■ We also have jurisdiction to hear Cerrato's section 1983 claims against the *other defendants*—in their individual capacities— for monetary damages. "Personal-capacity suits seek to impose *personal liability* upon a government official for actions he takes under color of state law." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (emphasis added). A victory in such a suit is a "victory against the individual defendant, rather than against the entity that employs him." *Id.* at 167–68, 105 S.Ct. at 3105. Thus, the Eleventh Amendment prohibition against monetary damages imposed on a state does not apply to such suits. Accordingly, we may hear Cerrato's section 1983 claim to the extent that he asks for monetary damages against the other defendants in their individual capacities.[16]

*2. Merits.* Having established our jurisdiction to hear Cerrato's section 1983 claims for certain forms of injunctive and monetary relief, we now turn to the merits of his argument. First, Cerrato argues that the district court should have granted him JNOV because there was "no legally sufficient evidentiary basis" for a reasonable jury to have found for the defendants. *See* Fed.R.Civ. Pro. 50(a). Second, Cerrato argues that the district court erred in submitting the question of the affirmative action plan's validity to the jury. Third, Cerrato argues that the district court erred in granting JN–AGREE in favor of defendants Tang and Wong. We address each argument in turn.

■ *(a) JNOV.* Cerrato argues that the district court should have granted JNOV in his favor because there was "no legally sufficient evidentiary basis" for a reasonable jury to have found for the defendants on his section 1983 claims. *See* Fed.R.Civ.Pro. 50(a). To establish a violation of section 1983's equal protection guarantee, the plaintiff must show that the defendants intentionally discriminated against him on the basis of his race. *See Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 2048–49, 48 L.Ed.2d 597 (1976).

■ To support his claim of intentional racial discrimination, Cerrato raised several issues at trial. First, he pointed to the very existence of the SFCC affirmative action plan. Second, he introduced statistics demonstrating a high percentage of minority hiring by the district. Third, he pointed to an alleged statement by the chancellor that he wanted more Chinese deans. Fourth, he pointed to the elimination of the teaching requirement for the Dean I of Instruction position. Fifth, he pointed to President Ramirez's committee's recommendation of Cerrato. Sixth, he pointed to the board's indifference to his objections concerning the hiring process. Seventh, he introduced evidence of his allegedly superior qualifications.

The record shows that the defendants introduced testimony refuting each of Cerrato's claims. First, the defendants introduced testimony showing that the SFCC affirmative action plan was not used in hiring Tom as Dean I of Instruction, and that the plan only applied to underrepresented positions. Because minority administrators were already *over* represented at SFCC, the plan was, according to the testimony of those in-

---

**16.** In any event, we have held that a section 1983 suit against state actors necessarily implies a suit against the defendants in their personal capacities. *See Price v. Akaka,* 928 F.2d 824, 828 (9th Cir.) (citing *Demery v. Kupperman,* 735 F.2d 1139, 1146 (9th Cir.1984), *cert. denied,* 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985)), *cert. denied,* —— U.S. ——, 112 S.Ct. 436, 116 L.Ed.2d 455 (1991).

volved, not even considered in Tom's case. At least twelve witnesses—including the chancellor, president, board members, and screening committee members—testified that the defendants did not use or apply the plan in selecting Tom as Dean I of Instruction.

Second, the defendants introduced evidence refuting Cerrato's statistics. *See generally* discussion *infra* pp. 976–77. Third, the defendants introduced evidence from the chancellor who denied that he had ever made a statement about wanting more Chinese deans. Fourth, the defendants introduced evidence showing that race had nothing to do with the deletion of the teaching requirement from the Dean I of Instruction position. Fifth, the defendants introduced evidence showing that the SFCC president's recommendation was merely advisory and that the chancellor had the final authority to make a selection. Sixth, the defendants introduced evidence that the board had considered Cerrato's objections seriously and rejected them strictly on the merits.

Finally, the defendants introduced evidence showing why Tom was in fact the better qualified candidate for the job. They cited Tom's superior academic credentials (he was the only candidate with a doctorate degree), Tom's extensive experience in community college administration (he was the only candidate with experience equivalent to that of Dean I of Instruction), Tom's valuable knowledge of collective bargaining and labor matters, and Tom's relationship with the centers division of SFCC. *See generally* discussion *supra* pp. 970–71.

Based on our review of the trial transcript, we conclude that there was a "legally sufficient evidentiary basis" for a reasonable jury to have found in favor of the defendants both with respect to each of the issues raised by Cerrato and with respect to the ultimate question whether the defendants intentionally discriminated against him. Accordingly, we affirm the district court's refusal to grant Cerrato JNOV with respect to his section 1983 claim.[17]

▪ *(b) Submission of Issue of Law to Jury.* Cerrato argues that the district court erred by submitting to the jury the question whether the SFCC affirmative action plan was constitutional. Although there is no circuit precedent directly on point, we agree with Cerrato that the question of an affirmative action plan's validity is a question of law that should be decided by the district judge. It is difficult to think of a question that involves a more purely "legal" matter than the question of a given plan's constitutionality. This rule comports with the holdings of at least two other circuits. *See Bratton v. City of Detroit,* 704 F.2d 878, 898 (6th Cir. 1983) ("We find, however, that the issue of the validity of an affirmative action plan is a question of law, to be determined by the court and not the jury."), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984); *Setser v. Novack Investment Co.,* 657 F.2d 962, 969 (8th Cir.1981) ("The issue of the validity of an affirmative action plan is one for the court and not the jury."), *cert. denied,* 454 U.S. 1064, 102 S.Ct. 615, 70 L.Ed.2d 601 (1981).

▪ Having determined that the district court erred, we must now decide whether the error warrants reversal. The harmless error standard in civil cases is whether the "jury's verdict is more probably than not untainted by the error." *See Haddad v. Lockheed Cal. Corp.,* 720 F.2d 1454, 1459 (9th Cir.1983).

The district court found that the plan was not taken into account during the selection process for Dean I of Instruction. We cannot say that this finding is clearly erroneous. In fact, we find no basis on which the jury could have reached the opposite conclusion. The evidence on this point was overwhelming and uncontradicted. Thus, whether or not the plan is constitutional, the submission of the question of its legality to the jury could not in any way have affected the jury's ultimate determinations. *See* discussion *supra* p. 973. In light of the above, we find the district court's error to be harmless. *See*

---

**17.** Cerrato also alleges that Tom himself engaged in discriminatory behavior by tampering with the requirements of the October 1984 job opening. Nothing in the record shows that Tom played any part in the creation of the new opening, however. Accordingly, the jury's verdict in favor of Tom should also be left undisturbed.

*Cancellier v. Federated Dep't Stores,* 672 F.2d 1312, 1316 (9th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982) (holding that an erroneous jury instruction pertaining to age discrimination was harmless because there was substantial evidence that age was not considered by the employer).

We note that our harmless-error holding with respect to this issue is consistent with the holdings of at least two sister circuits. *See, e.g., Johnsen v. Ind. Sch. Dist. No. 3,* 891 F.2d 1485, 1489 n. 3 (10th Cir.1989) (holding that submitting a question of law to the jury "does not automatically require reversal"); *Rodgers v. Norfolk Sch. Bd.,* 755 F.2d 59, 62 (4th Cir.1985) (holding that submitting a particular question of law to the jury "did not constitute reversible error").[18]

*(c) JN–AGREE.* Cerrato argues that the district court erred in granting JN–AGREE in favor of defendants Tang and Wong. We disagree. The jury determined that a voting majority of the Board (Brown, Burton, Wolfred, and Ayala) had acted lawfully in deciding to hire Tom over Cerrato. The district court also found that there was no substantial evidence showing that Tang or Wong had influenced any of the other members of the board. These findings are not clearly erroneous. Thus, Tang and Wong's actions did not affect the hiring decision and caused no injury to Cerrato. Accordingly, we hold that the district court did not err in granting JN–AGREE in favor of Tang or Wong. We recognize the dangers that would be created by a rule permitting an affirmance of a hiring decision notwithstanding discriminatory conduct on the part of a minority of board members, and we do not adopt any such rule here. In this case, there is no finding that Tang and Wong engaged in discriminatory conduct. Thus, we express no view on whether a finding of discriminatory conduct on the part of a minority of board members might in appropriate circumstances give rise to liability on the part of that minority or even on the part of the entire membership of the board.

*3. Remedies.* Because we affirm the district court's judgments with respect to Cerrato's section 1983 claims, we hold that he is not entitled to receive any injunctive or monetary relief from the defendants on this issue.

*C. Sections 1985 and 1986*

Cerrato next argues that the district court erred in failing to grant a JNOV with respect to his 42 U.S.C. §§ 1985 and 1986 claims.[19] The jury decided in favor of all the defendants with respect to Cerrato's section 1985 and 1986 claims.

■ The SFCC district is not liable because the Eleventh Amendment bars Cerrato's section 1985 and 1986 claims. *See supra* p. 972–73. We have already upheld the jury's finding that the other defendants did not violate Cerrato's civil rights. *See supra* pp. 973–74. Because the evidence with respect to the conspiracy claims clearly parallels the evidence with respect to the substantive claims, it follows that we must uphold the jury's finding that the defendants did not violate sections 1985 and 1986 either. Accordingly, we affirm the district court's judgment with respect to the conspiracy claims.

*D. Title VII*

Cerrato next contends that the district court erred by entering judgment in favor of all the defendants on his claim that the affirmative action plan violated Title VII. We examine each of Cerrato's objections in turn.

■ *1. Jurisdiction.* As a threshold matter, we note that the Eleventh Amendment does not bar us from hearing Cerrato's

---

**18.** Cerrato makes two additional challenges to the jury instructions regarding the affirmative action plan. First, he argues that there was insufficient evidence to support the instructions. Second, he argues that the district court misstated the proper standard for assessing a plan's validity.

Our determination that the affirmative action plan played no role in the decision to select Tom over Cerrato makes it unnecessary for us to reach these additional issues.

**19.** Section 1985 prohibits conspiracies to deny an individual his civil rights. Section 1986 imposes a liability for the failure to prevent such conspiracies.

Title VII claims. The Eleventh Amendment does not apply if Congress has abrogated its scope with respect to a given issue. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). The Supreme Court has held that Congress has abrogated the Eleventh Amendment with respect to Title VII claims. *See id.* at 455–56, 96 S.Ct. at 2671. Accordingly, we have jurisdiction to hear Cerrato's Title VII claims against all the defendants, including the SFCC district.

 *2. Standing.* Cerrato first argues that the district court erred in holding that he lacked standing to challenge the affirmative action plan. We agree. To establish standing, a person need only allege that a discriminatory policy exists that prevents him from competing on an "equal basis." *See Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville,* —— U.S. ——, ——, 113 S.Ct. 2297, 2303, 124 L.Ed.2d 586 (1993). Here, Cerrato alleged that the SFCC affirmative action policy did just that. He contends that he was not selected in part because the board's application of the affirmative action policy resulted in illegal discrimination and, as a result, he was prevented from competing on an "equal basis" with Tom. Accordingly, the standing requirement is satisfied.[20]

*3. Merits.* Turning to the merits of Cerrato's Title VII claim, we conclude that the district court did not err in entering judgment in favor of all the defendants.

 *(a) Disparate Treatment.* Cerrato contends that the district court erred in rejecting his disparate treatment claim. To prevail on such a claim, Cerrato must show that the defendants' hiring of Tom was motivated by their discriminatory intent. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). Cerrato argues that district court erred in concluding that the defendants were *not* motivated by such an intent. We disagree. The district court found that the defendants based their deci-

sion exclusively on several legitimate, nondiscriminatory factors. Based on our review of the record, we cannot say that the district court's findings were clearly erroneous. Accordingly, we reject Cerrato's argument.

 Alternatively, Cerrato suggests that the *mere existence* of the SFCC affirmative action plan gives rise to discriminatory intent on the part of the defendants. Other circuits have held—and common sense tells us—that the mere fact of an affirmative action plan's existence is not relevant to proving discrimination unless the employer acted pursuant to the plan. *See, e.g., McQuillen v. Wisconsin Educ. Ass'n Council,* 830 F.2d 659, 666 (7th Cir.1987), *cert. denied,* 485 U.S. 914, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988); *Canham v. Oberlin College,* 666 F.2d 1057, 1061 (6th Cir.1981), *cert. denied,* 456 U.S. 977, 102 S.Ct. 2242, 72 L.Ed.2d 851 (1982). We agree. Here, the district court found that the SFCC affirmative action plan played no part in the SFCC's selection of Tom. *See* discussion *supra* p. 974. Because the court's finding is not clearly erroneous, we reject Cerrato's alternative argument as well.

 *(b) Disparate Impact.* Cerrato also contends that the district court erred in rejecting his disparate impact claim. To prevail on such a claim, Cerrato must show that the defendants employed certain hiring criteria that had an adverse impact on him and members of his group. *See Dothard v. Rawlinson,* 433 U.S. 321, 329, 97 S.Ct. 2720, 2726–27, 53 L.Ed.2d 786 (1977). In particular, Cerrato argues that the district court erred in concluding that his statistics were faulty. The district court found, among other things, that Cerrato's statistics did not properly take into consideration the qualifications of the applicants, that the statistics employed too small a sample size, and that the statistics employed inadequate statistical techniques.

 We reject Cerrato's argument. In evaluating a disparate impact claim, a court may properly point out "fallacies or

---

**20.** The case on which the district court relies, *Associated General Contractors v. Coalition for Economic Equity,* 950 F.2d 1401, 1406 (9th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1670,

118 L.Ed.2d 390 (1992), is in no way contrary to our holding. There, also, we concluded that the injury asserted by the plaintiff was *sufficient* to confer standing. *Id.* at 1407.

deficiencies in the data offered by the plaintiff." *Dothard,* 433 U.S. at 331, 97 S.Ct. at 2727. Such flaws may include "statistics based on an applicant pool containing individuals lacking minimal qualifications for the job," "small or incomplete data sets," and "inadequate statistical techniques." *See Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 996, 108 S.Ct. 2777, 2790, 101 L.Ed.2d 827 (1988). Here, the district court rejected precisely the kinds of "fallacies and deficiencies" that must be excluded as unreliable.[21] Moreover, its factual findings with respect to the existence of inadequacies in Cerrato's statistical evidence are not clearly erroneous. Accordingly, we reject the disparate impact claim.

### E. State Law Claims

Cerrato does not challenge the district court's remand of the remaining state law claims to state court.[22]

### F. Evidentiary Rulings

 Cerrato finally argues that the district court abused its discretion by excluding evidence of promises to increase minority hiring made by board members during an election campaign. The district court ruled that such evidence was excludable under Fed.R.Evid. 403 both because the statements would have caused undue delay and because they would have confused the jury.

We hold that the district court did not err in excluding the evidence on the ground that it would cause undue delay. The district court explained that Cerrato's proposed questions would have led to a "mini trial on the election process of the City and County of San Francisco." *Id.* at 500. We cannot say that the district court abused its discretion in so concluding. We note incidentally

that election promises are of little worth, probative or otherwise. Moreover, there was testimony in the record already from board members that, *as a general matter,* they supported the district's affirmative action plan and the hiring of more minority faculty members. Thus, the "election promises" testimony would have been cumulative at best. We hold that the district court did not abuse its discretion in excluding the disputed evidence under Fed.R.Evid. 403.[23]

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.

## APPENDIX

*Cerrato v. San Francisco Community College District,* No. 92–15747 Overview of Procedural History

| Parties | FEDERAL CLAIMS: | | | | | STATE CLAIMS: | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | § 81 | § 83 | § 85 | § 86 | VII | Dis. | Kon. | Csp. |
| District | ¶ | ¶ | ● | ● | ** | † | † | ● |
| Hsu | ¶ | ¶ | ● | ● | ** | † | † | ● |
| Tom | ● | ● | ● | ● | ** | ● | † | ● |
| Tang | * | * | ● | ● | ** | † | † | ● |
| Wong | * | * | ● | ● | ** | † | † | ● |
| Wolfred | ● | ● | ● | ● | ** | † | † | ● |
| Brown | ● | ● | ● | ● | ** | † | † | ● |
| Ayala | ● | ● | ● | ● | *† | † | † | ● |
| Burton | ● | ● | ● | ● | ** | † | † | ● |

● — Jury acquitted; Trial court refused to grant JNOV in favor of plaintiff

¶ — Jury could not agree; Trial court refused to grant JN–AGREE in favor of plaintiff; Plaintiff dismissed defendant without prejudice prior to 2d trial

* — Jury could not agree; Trial court granted JN–AGREE in favor of defendant

** — Trial court entered findings in favor of defendant

† — Jury could not agree; Trial court refused to grant JN–AGREE in favor of plaintiff; Trial court remanded to state court

21. The district court held that Cerrato's statistics were flawed in three ways. First, Cerrato's expert failed to consider the qualifications of the other rejected white applicants. As a result, there was no way of telling which applicants were rejected because of race and which were rejected because of merit. Second, Cerrato's expert only used a small random sample instead of considering all hires during the period in question. This diminishes the evidence's probative value. Third, Cerrato's expert failed to distinguish between promotions and hires on the one hand, and mere title changes on the other. Many minority "promotions" and "hires" were simply title changes, which involved no change in duties and, as such, did not change the status quo.

22. The jury found for all defendants on the state conspiracy claim. It failed to reach agreement with respect to any of the defendants on the state contract claim. The jury found for Tom on the state discrimination claim, but failed to reach agreement with respect to any of the other defendants. The district court remanded to state court all claims on which the jury failed to agree.

23. We note that we have considerable doubt whether the evidence would have served to confuse a reasonable jury. However, in view of our holding regarding the delay issue, we need not decide that question here.