Khalil NOURI; et al., Plaintiffs—
Appellants,

v.

BOEING COMPANY, a Delaware
corporation, Defendant—
Appellee.

No. 04–35572.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 2006.

Decided June 30, 2006.

Christine E. Webber, Joseph M. Sellers, Esq., Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Marja M. Starczewski, Esq., Lynnwood, WA, Julie Goldsmith, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Harish Bharti, Esq., Seattle, WA, for Plaintiffs–Appellants.

Jon A. Geier, Esq., Barbara Berish Brown, Esq., Paul, Hastings, Janofsky & Walker, LLP, Washington, DC, Jeffrey A. Hollingsworth, Esq., John F. Aslin, Esq., Sonja Lengnick, Rima Fawal Hartman, Esq., Perkins Coie, LLP, Seattle, WA, for Defendant–Appellee.

Before: FERGUSON, CALLAHAN, Circuit Judges, and BOLTON,* District Judge.

## MEMORANDUM **

Plaintiffs/appellants (also referenced as "the Nouri Class") are engineers and technical workers who initiated a class action alleging race and national origin discrimination under 42 U.S.C. § 2000e et seq. ("Title VII") and 42 U.S.C. § 1981 against appellee The Boeing Company ("Boeing").[1] Appellants alleged both disparate treatment and disparate impact claims under Title VII; however, only the disparate impact claim is at issue on appeal. Appellants allege that Boeing violated Title VII by using a facially neutral classification

---

* The Honorable Susan R. Bolton, United States District Judge, United States District Court, District of Arizona, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Since the parties are familiar with the facts, we reference them only as necessary to explain our decision.

and compensation scheme that resulted in statistically significant lower salaries for members of the Nouri Class, as compared to similarly situated Caucasian employees. The district court determined that Boeing's compensation scheme did not disparately impact the salaries of the Nouri Class and ruled in favor of Boeing.

The experts on each side utilized "regression analysis" to evaluate Boeing's compensation and classification system, and both experts studied the same variables, with two significant exceptions: (1) Boeing's expert considered the effect that labor market demand ("year-of-hire") had on starting salaries, whereas appellants' expert did not; and, (2) Boeing's expert based his analysis on the classification system that Boeing used during the relevant period of this lawsuit (referred to as "SJC levels"), whereas appellants' expert used a Boeing classification system that pre-dated the relevant period of this lawsuit. On this record, there is no dispute that when year-of-hire and SJC levels are included in the regression analysis, no statistical disparity exists. Moreover, appellants adduced no evidence that SJC level or year-of-hire factors were themselves, discriminatory.

The district court found that year-of-hire and SCJ level were proper variables to include in the regression analysis. On appeal, appellants challenge this finding, and argue that when year-of-hire and SJC levels are excluded from the regression analysis, there is a statistical disparity between the salaries of the Nouri Class members and Caucasian employees.

■ We review the district court's evaluation of a plaintiff's Title VII disparate impact statistics for clear error. *Cerrato v. San Francisco Comty. Coll. Dist.*, 26 F.3d 968, 977 (9th Cir.1994). Review under the clearly erroneous standard is significantly deferential, requiring a "defi-

nite and firm conviction that a mistake has been committed" in order to reverse the district court. *Easley v. Cromartie*, 532 U.S. 234, 242, 121 S.Ct. 1452, 149 L.Ed.2d 430 (2001). We affirm.

*SJC Level*

The parties appear to agree that evaluating "sophistication of work" is a legitimate basis for comparing the Nouri Class salaries with the salaries of similarly situated Caucasian employees. They disagree, however, as to which method of assessing sophistication of engineering work should have been used in the regression analysis. Appellants' expert, Dr. Siskin, testified that he did not use SJC level in his regression analysis because SJC level was based, in part, on salary. Instead, he used Boeing's old "skill code" designation, which categorized engineers based on work specialty areas rather than salary. Dr. Siskin concluded that "it would be 'circular' to include the [SJC] rate-of-pay 'levels' in an analysis which was supposed to determine whether there were disparities" in rate of pay among groups doing comparable work.

Boeing concedes there is a correlation between engineer salaries and SJC level assignment, but asserted, through the testimony of Todd Zarfos, senior project engineer for Boeing, that SJC level is a proper variable for comparing the Nouri Class and Caucasian salaries because it is strongly correlated to the sophistication of the work being performed.

■ In light of Zarfos's testimony and appellants' failure to rebut the correlation between SJC level and the sophistication of the work of engineers, the district court agreed with Boeing that SJC levels should be included in the regression analysis. Moreover, the court noted that this correlation was mandated by the governing col-

lective bargaining agreement and that SJC levels were established through a fair process. Because the district court's reasoning is well supported by the record, we cannot conclude that the court committed clear error when it determined that SJC level is a proper variable to include in the regression analysis. *Easley,* 532 U.S. at 242, 121 S.Ct. 1452.

*Year of Hire*

Appellants argue that Dr. Ward's consideration of the year-of-hire variable, which measures the effect that labor market forces have on starting salaries, is problematic because starting salaries had "a taint of discrimination." [2]

This argument fails for two reasons. First, there is no support for appellants' insistence that labor market fluctuations should be ignored when comparing starting salaries—indeed, starting salaries in nearly every industry fluctuate according to labor market demands. Second, even if the year-of-hire variable is eliminated, there is no evidence that starting salaries for the Nouri Class members in any given year were statistically lower than starting salaries for similarly situated Caucasians.

█ Based on this record, the district court concluded that Dr. Ward's analysis was more persuasive, and that the year-of-hire variable is "an appropriate consideration when determining whether membership in a protected class is having an adverse impact on salary." Because the district court's reasoning is adequately supported by the record, we cannot conclude that it clearly erred in determining that the year-of-hire variable should be in-

cluded in the regression analysis. *Easley,* 532 U.S. at 242, 121 S.Ct. 1452.

AFFIRMED.

---

2. This argument sounds more in "disparate treatment" than "disparate impact." The jury ruled against appellants' disparate treatment claims, and appellants did not appeal. Accordingly, to the extent that appellants' argument is based on intentional discrimination, it is beyond the scope of this appeal.