**Sylvia J. WASSON, an individual,
Plaintiff,**

v.

**SONOMA COUNTY JUNIOR COLLEGE DISTRICT; Governing Board of the Sonoma County Junior College District; Robert F. Agrella; James Mitchell; and John Roberts, Defendants.**

**No. C–97–2767 WHO.**

United States District Court,
N.D. California.

Dec. 5, 1997.

Martin T. Reilley, Scott L. Steever, Lanahan & Reilly, LLP, Santa Rosa, CA, for Plaintiff.

Scott N. Kivel, Larry Frierson, Liebert, Cassidy & Frierson, San Francisco, CA, for Defendants.

## OPINION AND ORDER

ORRICK, District Judge.

In this action, plaintiff Sylvia J. Wasson ("Wasson") brings a large assortment of federal and state constitutional and common law claims against various defendants associated with the Sonoma County Junior College District ("District"). Wasson's claims are for acts related to defendants' attempt to terminate her for distributing anonymous letters critical of President Robert F. Agrella ("Argella") of Santa Rosa Junior College. Defendants now move to dismiss all claims. Defendants also move to disqualify Wasson's counsel because an attorney now associated with Wasson's counsel once represented Agrella and his wife during their divorce. For the reasons hereinafter set forth, the motion to dismiss is granted in part, and denied in part. The motion to disqualify is denied.

## I.

The following statement of facts is summarized from Wasson's complaint. Wasson has been an employee of the District as an instructor or administrator at Santa Rosa Junior College for twenty-two years. The District is a public school district in Sonoma County, California. Defendant Governing Board of the Sonoma County Junior College District ("Governing Board") is responsible for the policies, practices and customs of the District, including the dismissal of faculty. Defendant Agrella is President of the District. Defendant James Mitchell ("Mitchell") is Personnel Director of the District. Defendant John Roberts ("Roberts") is Vice President of Business Services for the District.

During the 1992–93 and 1993–94 school years, an unspecified dispute arose between Wasson and the District, which was resolved by a settlement in April 1994. In accordance with the terms of the settlement agreement, Wasson resigned as an administrator and returned to full-time classroom teaching. The District agreed to "[m]ake all future decisions with respect to WASSON's employment with DISTRICT on a good faith basis without regard to any of the events that led to this agreement." (Compl. ¶ 10 and Ex. A.)

Wasson continued to teach full time until January 14, 1997, when the Governing Board issued a "Statement of Decision to Dismiss" Wasson from her teaching position. The decision to dismiss was based on Wasson's alleged "evident unfitness for service." (Id. ¶ 12 and Ex. L.) The Statement of Charges attached to the Governing Board's Notice of Decision to Dismiss ("Notice") alleged that Wasson was responsible for preparing and distributing an anonymous flier and five anonymous letters (collectively "the letters"), all of which were critical of Agrella, his administration, and the Governing Board. The letters were circulated at various times between August 1995 and October 1996. Wasson's alleged preparation of the letters is the sole ground listed in the Statement of Charges for Wasson's dismissal. Wasson contends that she is not the author or disseminator of the letters. (Id. ¶ 33.) Wasson also contends that many of the allegations in the letters were true, and that the Governing Board failed to properly investigate the truth of any of the allegations in the anonymous letters before deciding to terminate her.

In the spring of 1996, after Agrella advised the Governing Board of his conclusion that the letters were authored by a District employee, the Governing Board conducted an investigation. Agrella identified three individuals who he believed might be the author of the letters. During the course of the investigation, Agrella authorized Mitchell to obtain materials from confidential personnel files, including Wasson's file, to be examined as part of the investigation. The Governing Board's Personnel Files and Confidentiality Policy provides that "[a]ll personnel files will be considered confidential and will not be available to persons other than the employee and those authorized on a 'need-to-know' basis by the Superintendent/ President." (Id. ¶ 22 and Ex. I.) The contract between the All Faculty Association and the District also provides that "[t]he contents of all personnel files shall be kept in the strictest confidence." (Id. ¶ 23, and Ex. J at 72, ¶ 20.1B.)

In late April 1996, the writings and documents from the personnel files were delivered to document examiner Patricia Fisher, who reviewed the documents and formed the opinion that the handwriting on one envelope and the prose style of the anonymous letters were that of Wasson. Fisher then requested additional exemplars of Wasson's writing, including those obtainable from computer fonts, typewriters and photocopiers.

Agrella then requested the Chief of Campus Police, Terry Stewart, to identify the location of the computer printers, typewriters and photocopiers, which might have been available for use by Wasson. In early May 1996, forty-nine machines in thirteen different locations were sampled, and in at least eleven instances documents were retrieved and printed that had personal content. The District's Computer and Communications Technology Use Policy provides that "[p]rograms and files are confidential unless they have explicitly been made available to other authorized individuals." (*Id.* ¶ 27 and Ex. K at 2, ¶ 7.)

Wasson first received notice of the Governing Board's intent to dismiss her when Stewart confronted her in her driveway at home on January 14, 1997 by positioning his unmarked vehicle directly behind her vehicle, effectively blocking her in her garage. Wasson was blinded by the headlights of Stewart's vehicle, was unable to identify the occupant of the vehicle, and was fearful of being attacked in her garage. Stewart, without exiting his vehicle, rolled down his window, identified himself, and handed Wasson a manila envelope containing the Governing Board's Notice.

Wasson contends that she was not given an opportunity for a pretermination hearing or to have the charges against her heard in open session upon twenty-four hours notice, as is allegedly provided for under the Brown Act. Cal. Gov't Code § 54957. After being removed from the classroom, Wasson sought a temporary restraining order ("TRO") in the Superior Court of Sonoma County to enjoin the District from terminating her. The TRO was granted with the condition that Wasson be placed on paid administrative leave pending a hearing on whether a preliminary injunction should be granted.

On March 27, 1997, the District withdrew the charges against Wasson, without prejudice. Wasson contends that this withdrawal of charges without prejudice allows the District to reinstate the identical charges against her at any time within the next four years, which is a threat that curtails her employment rights during this period. In light of the District's withdrawal of the charges, and Wasson's reinstatement to her full-time teaching position, Wasson dismissed her state court action, without prejudice, on May 7, 1997.

On March 25, 1997, Agrella issued a letter to the college community in which he and the Governing Board acknowledged that the investigation had proven destructive to the college and its faculty, staff and administrators. Agrella labeled the letters as "hate mail." Agrella issued a public apology to the individuals who were identified as being part of the handwriting investigation. He acknowledged that personnel information was expected to be treated confidentially and that access to such areas should be done openly, and not in a clandestine manner. (Compl. ¶ 36 and Ex. M.)

On March 17, 1997, the Governing Board hired attorney Michael O'Donnell to complete a review of the investigation of Wasson. A report entitled "Report On Investigation Into Issues Surrounding Dismissal (Now Withdrawn) Against Dr. Sylvia Wasson" ("Report") was released to the public on April 11, 1997, allegedly as part of the Governing Board's ongoing campaign to defame, vilify and intimidate Wasson. (Compl.¶ 37.) A section of the Report discussing "Other Harassment of Dr. Agrella" allegedly accused Wasson, directly and by innuendo, of carrying out a harassment campaign against Agrella in 1995 and 1996, which included numerous abusive and harassing telephone messages, eavesdropping, forgery, and vandalism to Agrella's personal vehicle. The Report accused Wasson of being the author of the letters, and stated that the Governing Board concluded that Wasson was of unfit moral character, lacked emotional stability, and was unfit to continue as an employee of

the District. The Report was widely distributed and republished to faculty, administration, staff and the community at large in Sonoma County. The Report allegedly has caused harm to Wasson's professional reputation and standing within the academic community and the community at large.

The Report was also released by the District to the *Chronicle of Higher Education,* a preeminent national academic publication. In a story dated June 6, 1997, certain of the Report's allegedly libelous allegations against Wasson were republished, allegedly causing damage to Wasson's professional reputation and academic employment on a national scale.

## II.

Wasson asserts a potpourri of federal claims, pursuant to 42 U.S.C. § 1983, and pendent state claims against the defendants, including the following:

1. Her dismissal because of defendants' incorrect belief that she authored the letters violated her right to exercise free speech as guaranteed by the First Amendment of the United States Constitution and Article I, section 2 of the California Constitution.

2. Her dismissal without formal notice of any charges against her and without an opportunity to present her side of the matter prior to dismissal violated her property interest in employment and her liberty interest in her good name, without due process, in violation of the Fourteenth Amendment of the United States Constitution, and Article I, section 7 of the California Constitution.

3. The retrieval and dissemination of documents from her personnel file and her computer constituted an unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution, and Article I, section 13 of the California Constitution.

4. This allegedly unlawful search and seizure constituted an invasion of privacy in violation of the Ninth and Fourteenth Amendments of the United States Constitution, and Article I, section 1 of the California Constitution, and state common law.

5. Claims for defamation and false light publicity based upon defendants' publication of false statements about her.

6. Claims for breach of contract, and tortious breach of the covenant of good faith and fair dealing, for breach of the provision in the parties' 1994 settlement agreement that all future decisions with respect to Wasson's employment would be made on a good faith basis.

7. Claims for negligent and intentional infliction of emotional distress.

### A.

At the outset, defendants raise the important threshold question whether all claims against all of the defendants are barred by the Eleventh Amendment of the United States Constitution. The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has interpreted the Eleventh Amendment to provide that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (citing *Employees of Dept. of Pub. Health & Welfare, State of Missouri v. Department of Public Health & Welfare, State of Missouri,* 411 U.S. 279, 280, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973)). The Eleventh Amendment also bars all suits in federal court against state agencies or departments, regardless of the nature of the relief sought. *Id.* at 100, 104 S.Ct. 900. Cities and counties, however, do not enjoy Eleventh Amendment immunity. *Hess v. Port Authority Trans–Hudson Corp.,* 513 U.S. 30, 37, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994). Accordingly, the Court must determine whether the District is an arm of the state, or is more like a county or city.

The Ninth Circuit has held that a court must consider the following factors in

determining whether an entity is an arm of the state: (1) whether a money judgment would be satisfied out of state funds; (2) whether the entity performs central governmental functions; (3) whether the entity may sue or be sued; (4) whether the entity has the power to take property in its own name or only the name of the state; and (5) the corporate status of the entity. *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir.1988) (citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982)), *cert. denied*, 490 U.S. 1081, 109 S.Ct. 2102, 104 L.Ed.2d 663 (1989). The most crucial question is whether the named defendant has such independent status that a judgment against the defendant would not impact the state treasury. *Hayakawa*, 682 F.2d at 1350.

In *Mitchell*, the Ninth Circuit found that the Los Angeles Community College District was an arm of the state because its budget was made up of funds received from the state's general fund and because some of the fees charged by the district's colleges go to the state. 861 F.2d at 201. The court also noted that previous cases had determined that California state colleges and universities are considered to be state agencies. *Id.* The court concluded that the Los Angeles Community College District was a state agency for Eleventh Amendment purposes. *Id.; see also Cerrato v. San Francisco Community College Dist.*, 26 F.3d 968, 972 (9th Cir.1994) (citing *Mitchell* as holding that community college districts are dependent instrumentalities of the state of California, and finding that the San Francisco Community College District was a state agency with Eleventh Amendment immunity); *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 251–54 (9th Cir.1992) (concluding, after exhaustive analysis, that California public school districts are immune from suits in federal court under the Eleventh Amendment).

Both parties acknowledge that the District is a California community college district. There is nothing in *Mitchell* or *Cerrato* to suggest that individual community college districts in California might be treated differently for purposes of the Eleventh Amend-

ment. Although Wasson provides detailed arguments as to why the Court should not follow *Mitchell*, those arguments apply generally to all California community colleges, and are better made to the Ninth Circuit *en banc*. This Court is bound to follow *Mitchell* and *Cerrato* and finds that the District is a state agency for purposes of the Eleventh Amendment. Accordingly, all claims against the District and the Governing Board are dismissed, without prejudice to refiling in state court.

### B.

The Court next turns to the claims against the individual defendants. To determine whether a federal suit against a state official is barred by the Eleventh Amendment, the Court must look to whether the official is sued in his official or individual capacity.

#### 1.

The Eleventh Amendment does not bar federal court suits against a state officer in his individual capacity, regardless of the relief sought. *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Ashker v. California Dept. of Corrections*, 112 F.3d 392, 394 (9th Cir.1997), (citing *Pena v. Gardner*, 976 F.2d 469, 472–74 (9th Cir. 1992)), *cert. denied*, —— U.S. ——, 118 S.Ct. 168, 139 L.Ed.2d 111 (1997). The Court determines whether an official is sued in his official capacity or in his individual capacity by "reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Id.* at 395 (quoting *Hafer v. Melo*, 502 U.S. 21, 26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)).

Here, Agrella, Mitchell and Roberts are all sued in both their individual and official capacities. Defendants do not move to dismiss the claims against the individual defendants in their individual capacities on the basis of Eleventh Amendment immunity.

#### 2.

Federal court suits against state officials in their official capacities may or may not be barred by the Eleventh Amendment, depending upon the relief sought and whether the suit is brought under federal or state law.

### a.

[7–9] When a plaintiff sues a state official in his or her official capacity for a violation of federal constitutional or statutory law, the federal court may award an injunction governing the official's future conduct, but may not award retroactive monetary relief. *Pennhurst*, 465 U.S. at 102–03, 104 S.Ct. 900 (citing *Edelman v. Jordan*, 415 U.S. 651, 666–67, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) and *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Permitting prospective injunctive relief against state officials for violations of federal law reconciles the competing interests of (1) promoting the supremacy of federal law and (2) accommodating the constitutional immunity of the States. *Id.* at 105–06, 28 S.Ct. 441. Wasson asserts numerous claims under 42 U.S.C. § 1983 against the individual defendants seeking damages and injunctive relief. A state official is not a person for purposes of § 1983 and may not be sued under § 1983 in his official capacity for damages, although he may be sued for injunctive relief. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Hafer*, 502 U.S. at 27, 112 S.Ct. 358. The § 1983 claims against the individual defendants in their official capacities are all dismissed, without prejudice to refiling in state court, to the extent Wasson seeks damages.

### b.

■■■■ Federal court suits asserting state law claims against state officials in their official capacities are barred where the relief sought has an impact directly on the state itself. *Pennhurst*, 465 U.S. at 117, 104 S.Ct. 900. Such suits against state officials are considered to be suits against the state "if 'the judgment would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act."

*Id.* at 100 and n. 11, 104 S.Ct. 900 (quoting *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963)) (citations omitted). "[A] suit against state officials [based on state law] that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Id.* at 102, 104 S.Ct. 900. Indeed, a federal court may never enjoin a state official from violating state law. *Id.* at 106, 104 S.Ct. 900.

■■■■ Defendants move to dismiss, pursuant to the Eleventh Amendment, the state law claims asserted against the individual defendants in their official capacities to the extent Wasson seeks injunctive relief, but do not explicitly move to dismiss the state law claims against the individual defendants to the extent Wasson seeks damages .[1] Following *Pennhurst*, the Court grants the motion to dismiss the state law injunctive relief claims.

### C.

Having ruled on the Eleventh Amendment motion, all claims against the District and the Board are dismissed. The remaining claims against the individual defendants are: (1) all federal and state law claims against them in their individual capacities; (2) all federal claims against them in their official capacities, but only to the extent Wasson seeks injunctive relief; (3) all state law claims against them in their official capacities, but only to the extent Wasson seeks damages.

### D.

Roberts and Mitchell move to dismiss all claims against them for lack of sufficient factual allegations of unlawful acts or omissions. The Court agrees that, in general, the allegations against Roberts and Mitchell are sketchy and conclusory. Rather than examine in detail the specific allegations against Roberts and Mitchell with respect to each claim, the Court will simply grant their mo-

---

1. The Court declines to consider the arguments on this point that appear for the first time in defendants' reply brief. Defendants may reassert the argument if and when Wasson files an amended complaint. The Court notes that although California has an indemnification statute that requires the state to pay damage awards imposed against state officials for acts performed during the course of their official duties, Cal. Gov.Code § 825, that is not enough by itself to treat actions against state officials as actions against the state. *Demery v. Kupperman*, 735 F.2d 1139, 1147 (9th Cir.1984), *cert. denied*, 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985).

tion to dismiss, with leave to amend. In doing so, the Court does not hold that all allegations against Roberts and Mitchell are insufficient as a matter of law, but simply agrees that Wasson needs to provide more notice to Roberts and Mitchell of the specific legal and factual allegations against them.

## E.

The individual defendants move to dismiss the § 1983 claims against them on the basis of qualified immunity, and for failure to state a claim. The defense of qualified immunity protects "government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity is limited to actions for damages against a government official in his individual capacity; it is not available when an official is sued in his official capacity, *Brandon v. Holt,* 469 U.S. 464, 472–73, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Owen v. City of Independence,* 445 U.S. 622, 651, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), nor is it available when the only relief sought is injunctive. *American Fire, Theft & Collision Managers, Inc. v. Gillespie,* 932 F.2d 816, 818 (9th Cir.1991). Accordingly, qualified immunity is available, if at all, only for the § 1983 claims for damages asserted against the individual defendants in their individual capacities.

The test for qualified immunity test is a two-part inquiry: (1) Was the law governing the official's conduct clearly established? (2) Under that law, could a reasonable official have believed his conduct was lawful? *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871–72 (9th Cir.1993). The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. *Maraziti v. First Interstate Bank,* 953 F.2d 520, 523 (9th Cir.1992). If the plaintiff meets this burden, then the defendant bears the burden of establishing that his actions were reasonable, even if they violated the plaintiff's constitutional rights. *Id.* at 523. Wasson as-

serts § 1983 claims for violations of the First, Fourth, Ninth and Fourteenth amendments to the United States Constitution.

Wasson also bases her § 1983 claims on various provisions of the California Constitution. A § 1983 claim, however, may only be based on violation of a right secured by the Constitution and laws of the United States. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Accordingly, Wasson's § 1983 claims based on violations of the California Constitution are dismissed.

### 1.

It is clearly established that public employees cannot be disciplined solely for exercising their First Amendment rights by speaking on a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 140, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). To determine whether a particular instance of discipline was a violation of the First Amendment requires balancing the interests of the employee in commenting upon matters of public concern against the interest of the State in promoting the efficiency of the public services it performs through its employees. *Id.*

The letters for which Wasson was disciplined comment upon Agrella's fitness to be president of the college, a matter that is clearly of public concern. If defendants based their decision to terminate Wasson on an unreasonable belief that Wasson engaged in unprotected speech, and Wasson did not do so, defendants may have violated the First Amendment. *See Waters v. Churchill,* 511 U.S. 661, 667–68, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994).

Wasson alleges that defendants terminated her without properly investigating the source of the letters or the truth of the allegations in the letters. She states that she did not, in fact, write the letters. She also contends that the dissemination of the letters did not disrupt the orderly administration of the college or negatively impact the education offered in the district. The Court cannot find that defendants' actions, as alleged, could have been viewed as lawful by a reasonable official. Accordingly, defendants'

motion to dismiss the First Amendment claim on the basis of qualified immunity is denied at this time.

■ Defendants also seek to dismiss the First Amendment claims for lack of standing and mootness. Defendants contend that because Wasson admits that she did not write the letters, she cannot claim that her First Amendment rights were infringed. The Court disagrees. Wasson's dismissal was explicitly based on defendants' *belief* that she had written and distributed the letters. The government may violate the First Amendment by terminating an employee because of the government's belief that the employee engaged in unprotected speech, if the government's belief was unreasonable under the circumstances, and the employee actually engaged in protected speech or did not speak at all. *Id.* at 669, 677–78, 114 S.Ct. 1878. Wasson has standing to assert her First Amendment claim because she suffered a concrete injury in being threatened with dismissal and in being prevented from teaching by being placed on administrative leave because of defendants' belief that she wrote and distributed the letters.

■ Defendants also argue that the claim is moot because the notice of dismissal was withdrawn and, thus, Wasson cannot complain of having suffered any injury. This is ludicrous. Wasson was prevented from teaching for months, even though she was placed on administrative leave with pay. Moreover, the Court fails to see how the claim for injunctive relief is moot when defendants are alleged to have withdrawn the notice of dismissal without prejudice, and allegedly are not barred from initiating dismissal again on the same charges.

2.

■ As for the Fourth Amendment claim, it has long been clearly established that searches and seizures of private property of employees by their government employers or supervisors are subject to the restraints of the Fourth Amendment. *O'Connor v. Ortega,* 480 U.S. 709, 715, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). The Court noted, however, "[P]ublic employees' expectations of privacy in their offices, desks, and file cabinets, like similar expectations of employees in the private sector, may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." *Id.* at 717, 107 S.Ct. 1492. Because of the variety of work environments in the public sector, the question of whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis. *Id.* at 718, 107 S.Ct. 1492. If the employee does have a reasonable expectation of privacy in the area that was searched, the Court must balance the invasion of those privacy interests against the government's need for supervision, control, and the efficient operation of the workplace. *Id.* at 719–20, 107 S.Ct. 1492. "[P]ublic employer intrusions on the constitutionally protected privacy interests of government employees for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances." *Id.* at 725–26, 107 S.Ct. 1492. Ordinarily, a search will be justified at its inception where there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct. *Id.* at 726, 107 S.Ct. 1492.

■ Here, the complaint alleges that the Governing Board's written policy provides that personnel files are confidential but may be available to those authorized on a need-to-know basis by the Superintendent/President. (Compl. ¶ 22 and Ex. I.) A written policy also provides that computer programs and files are confidential unless they have been explicitly been made available to other authorized individuals. (*Id.* ¶ 27 and Ex. J at 2 ¶ 7.) That computer policy also provides, however, that "[t]he district reserves the right to access all information stored on district computers" with advance notice, if practical. (*Id.* Ex. J at 2 ¶ 7.) It is clear from these policies that Wasson could not have had a reasonable expectation that her personnel records and computer files could not be accessed by the district at the request of the president. There is no limitation in these policies on the purpose for which her records could be ac-

cessed at the request of the president. Accordingly, the Court finds that Wasson could not have had a reasonable expectation of privacy in her personnel files and computer files with respect to access by the district. Moreover, the individual defendants could have had a reasonable belief that their acts in accessing Wasson's personnel files and computer files was lawful. Thus, the Court dismisses, with prejudice, the § 1983 claim for violations of the Fourth Amendment, on the basis of qualified immunity and for failure to state a claim.

### 3.

Wasson's Fourteenth Amendment claims are based on three grounds. First, Wasson claims that she was deprived of her property interest in her employment in violation of procedural due process because she was not given formal notice of the charges against her or an opportunity to present her side of the matter prior to her termination. Second, Wasson claims that defendants violated her liberty interest by publicly accusing her falsely of disseminating the letters, and by terminating her without notice or an opportunity to respond. Third, Wasson contends that defendants violated her right to privacy, as found in the Fourteenth and Ninth Amendments, by disclosing private information from her personnel file and computer files to the public.

### a.

The Court grants defendants' motion to dismiss Wasson's claim that defendants violated due process by terminating her without notice and without an opportunity to respond, on the basis of qualified immunity and for failure to state a claim. Public employees who can be discharged only for cause have a constitutionally protected property interest in their employment and cannot be fired without due process. *Gilbert v. Homar,* 520 U.S. 924, ——, 117 S.Ct. 1807, 1811, 138 L.Ed.2d 120 (1997). Prior to termination, the employee is entitled to a very limited hearing, oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story. *Id.* (citing *Cleveland Board of Education v. Loudermill,*

470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). The employee is entitled to a more comprehensive post-termination hearing. *Id.* If the employer perceives a significant hazard in keeping the employee on the job, and needs to terminate the employee immediately, any due process problem is avoided by suspending the employee with pay. *Id.* Wasson, by acknowledging that she was placed on paid administrative leave, cannot claim that she was deprived of a property interest in her employment, as a matter of law. *Id.*

Moreover, the documents attached to her complaint contradict her assertion that she was denied an opportunity to contest the charges against her. Wasson alleges that she received the Notice on January 14, 1997. (Compl.¶ 31.) The Notice lists as enclosures the Statement of Decision to Dismiss and Statement of Charges, which explicitly list the charges against Wasson. (*Id.* Exs. B and L.) The Notice also provides:

> You are notified that you will be dismissed from employment with the District effective February 13, 1997. Should you request a hearing, you will remain on administrative leave and remain in paid status until a final decision is reached following a hearing.

(*Id.* Ex. B.) By the plain language of the attachments to her complaint, she was given notification of the charges against her and an opportunity to be heard. The notice provided that she would be paid on administrative leave pending a hearing, if she desired one. Wasson does not allege that she sought opportunity to be heard, but was denied a hearing.

As Wasson implicitly concedes in her opposition brief, her arguments that defendants violated state law procedures, even if true, do not provide a basis for her due process claim. "The question before us is not whether [defendants'] actions were reasonable under state law, but whether the challenged conduct violates clearly established federal law, here the due process clause of the fourteenth amendment." *Finkelstein v. Bergna,* 924 F.2d 1449, 1452 (9th Cir.), *cert. denied,* 502 U.S. 818, 112 S.Ct. 75, 116 L.Ed.2d 49 (1991).

The allegations of the complaint demonstrate that defendants possess qualified immunity on this claim. Moreover, because Wasson alleges that she was placed on administrative leave with pay, and was never actually terminated, her claim for deprivation of property without due process fails as a matter of law. Defendants' motion to dismiss the due process claim for violation of Wasson's property interest in her employment is granted, with prejudice.

b.

The liberty protected by the due process clause of the Fourteenth Amendment encompasses an individual's freedom to work and to earn a living. *Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093, 1100 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). Thus, when the government dismisses an individual for reasons that might seriously damage his standing in the community, he is entitled to notice and a hearing to clear his name. *Id.* (citing *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Only charges that seriously damage an employee's reputation or significantly foreclose her freedom to take advantage of other employment opportunities implicate the liberty interest protected by the Fourteenth Amendment. *Id.* at 1101. Unpublicized accusations do not infringe constitutional liberty interests because by definition, they cannot harm the employer's good name, reputation, honor, or integrity. *Id.* (citing *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). Thus, the procedural protections of due process apply if the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment or the alteration of some right or status recognized by state law. *Jones v. Los Angeles Community College Dist.,* 702 F.2d 203, 206 (9th Cir.1983) (citing *Vanelli v. Reynolds Sch. Dist.,* 667 F.2d 773, 777–78 (9th Cir.1982)). Once the charges are validated at an evidentiary hearing that comports with due process, subsequent disclosure of the reasons for dismissal would not violate the employer's constitutional rights. *Id.* at 207.

As noted above, Wasson was given an opportunity to respond to the charges against her. She was never actually terminated, and defendants' plans to dismiss her ultimately were withdrawn. There is no allegation in the complaint, as defendants point out, that they made public the charges against Wasson prior to the filing of Wasson's state court complaint. There is no allegation that Wasson was forced to go public with the allegations because defendants refused to provide her with a hearing prior to her termination. Wasson could have remained silent pending the hearing on her termination. Under these circumstances, as alleged, any damage to Wasson's liberty interest was caused by her own publication of the charges against her.[2] *Cf. Correa v. Nampa Sch. Dist. No. 131,* 645 F.2d 814, 817 (9th Cir.1981) ("[W]here adequate administrative procedures exist, a person cannot state a claim for denial of procedural rights when he has elected to forego a complete hearing.") Defendants' motion to dismiss the liberty claim for failure to state a claim is granted, with leave to amend.

c.

The federal constitution protects at least two different kinds of privacy interests. *Whalen v. Roe,* 429 U.S. 589, 598–99, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions. *Id.* at 599–600, 97 S.Ct. 869. The latter has generally been limited to matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. *Id.* at 600 n. 26, 97 S.Ct. 869. There is no hint that any of these issues are involved in this case.

The federal constitutional right against disclosure of personal matters has been infrequently examined and its contours are unclear. *Davis v. Bucher,* 853 F.2d 718, 719

---

**2.** Whether defendants' public statements about Wasson, after she made the charges public, may have been defamatory is another question. Defamation, however, is not a constitutional deprivation. *Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

(9th Cir.1988); *Doe v. Sundquist,* 106 F.3d 702, 706 (6th Cir.1997). It is clear, however, that Wasson cannot assert any privacy claim as to information that she has already released to the public. *Nixon v. Administrator of General Services,* 433 U.S. 425, 459, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). Wasson has not alleged specifically what defendants released to the public that Wasson had not already publicized in her state court lawsuit, and for that reason alone, the federal constitutional privacy claim must be dismissed, with leave to amend.

In addition, Wasson has not specified the material defendants released to the public in enough detail for the Court to determine whether it might conceivably fall within a recognized privacy interest protected by the federal constitution. Should Wasson wish to amend this claim, she should be prepared to brief the scope of her constitutional privacy interest in greater depth than the parties have done here. Wasson's § 1983 claim for invasion of privacy in violation of the federal constitution is dismissed, with leave to amend.

### F.

The Court now turns to Wasson's state law claims against the individual defendants. Wasson asserts state law claims against one or more of the individual defendants for invasion of privacy, breach of contract, tortious breach of the covenant of good faith and fair dealing, and negligent and intentional infliction of emotional distress.[3]

### 1.

Defendants argue that the claims for breach of the settlement agreement and breach of the covenant of good faith and fair dealing relating to that alleged breach must be dismissed as to the individual defendants because they are not parties to the contract. The Court agrees. Because the settlement agreement expressly provides that the only parties to the agreement are Wasson and the District, those claims are dismissed with prejudice as to the individual defendants. *See* Compl. Ex. A at 1 ("The parties to this

Agreement are SYLVIA WASSON (WASSON) and the SONOMA COUNTY JUNIOR COLLEGE DISTRICT (DISTRICT).")

### 2.

Defendants argue that the remainder of the state law claims against the individual defendants—for invasion of privacy and negligent and intentional infliction of emotional distress—must be dismissed because the individual defendants are immune from suit on these claims, pursuant to §§ 820.2 of the California Government Code and 821.6, and § 47 of the California Civil Code.

"[I]n general, an immunity provision need not even be considered until it is determined that a cause of action would otherwise lie against the public employee or entity." *Caldwell v. Montoya,* 10 Cal.4th 972, 985, 42 Cal.Rptr.2d 842, 850, 897 P.2d 1320 (1995). Accordingly, the Court looks first to determine whether a claim has been stated against any of the individual defendants for invasion of privacy or negligent or intentional infliction of emotional distress.

### a.

The elements of a common law action for invasion of privacy are (1) a public disclosure (2) of private facts (3) which would be offensive and objectionable to a person of ordinary sensibilities. *Forsher v. Bugliosi,* 26 Cal.3d 792, 808–09, 163 Cal.Rptr. 628, 637, 608 P.2d 716 (1980). The invasion of privacy claim is asserted against the District, the Governing Board, Roberts and Mitchell. The Court has already dismissed this claim against the District and the Governing Board because of Eleventh Amendment immunity. The Court has already dismissed all claims against Roberts and Mitchell for lack of specificity, with leave to amend. In particular, as noted above, Wasson has not alleged what Roberts and Mitchell disclosed, if anything, that was not already disclosed to the public by Wasson in her state court lawsuit. Nor has Wasson itemized the specific private facts that were disclosed to the public. As the Court has already dismissed the invasion

---

3. Wasson's state law claims for defamation and false light publicity are asserted only against the

District and the Governing Board and are barred by the Eleventh Amendment.

of privacy claim as to all defendants, it need not discuss defendants' claims of immunity.

b.

The claims for negligent and intentional infliction of emotional distress are asserted against the District, the Governing Board, Agrella and Roberts. The Court has already dismissed these claims as to the District and the Governing Board because of Eleventh Amendment immunity, and as against Roberts, for failure to plead the factual allegations against Roberts with the requisite specificity. The Court turns to the emotional distress claims against Agrella.

Negligent infliction of emotional distress is not a separate tort, but is merely the tort of negligence, to which the traditional elements of duty, breach of duty, causation and damages apply. *Huggins v. Longs Drug Stores Cal., Inc.,* 6 Cal.4th 124, 129, 24 Cal. Rptr.2d 587, 590, 862 P.2d 148 (1993); *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.,* 48 Cal.3d 583, 588, 257 Cal.Rptr. 98, 101, 770 P.2d 278 (1989). The elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant that exceeds all bounds of that usually tolerated in a civilized society; (2) with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (3) severe or extreme emotional distress suffered by the plaintiff; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 1001, 25 Cal.Rptr.2d 550, 574, 863 P.2d 795 (1993). Defendants do not argue that Wasson has failed to plead the elements of her claims for emotional distress, but argue that all such claims are barred by the exclusivity provisions of California's Workers' Compensation laws.

[44, 45] The California Supreme Court has held that:

when the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability.

*Cole v. Fair Oaks Fire Protection Dist.,* 43 Cal.3d 148, 160, 233 Cal.Rptr. 308, 315, 729 P.2d 743 (1987). Psychological injuries arising from termination generally are also covered exclusively by the Workers' Compensation act. *Shoemaker v. Myers,* 52 Cal.3d 1, 276 Cal.Rptr. 303, 313–14, 801 P.2d 1054 (1990). The California Supreme Court has specifically held that if the basic conditions of compensation are otherwise satisfied, and the employer's conduct neither contravenes public policy nor exceeds the risks inherent in the employment relationship, an employee's emotional distress injuries are subsumed under the exclusive remedies of workers' compensation. *Livitsanos v. Superior Court,* 2 Cal.4th 744, 754, 7 Cal.Rptr.2d 808, 815, 828 P.2d 1195 (1992). "[C]ourts in wrongful discharge actions may not declare public policy without a basis in either constitutional or statutory provisions." *Gantt v. Sentry Ins.,* 1 Cal.4th 1083, 1095, 4 Cal.Rptr.2d 874, 881, 824 P.2d 680 (1992).

Here, the Court has already held that Wasson has stated a claim under the First Amendment of the United States Constitution. Such a claim, if upheld, clearly would constitute a violation of public policy by the employer, and any claim for emotional distress based on that violation of federal constitutional law would not be barred by workers' compensation. Accordingly, at least part of Wasson's claims for emotional distress are not barred by the California workers' compensation laws, and defendants' motion to dismiss those claims on that ground is denied.

Because the state of the pleadings is so unsettled as a result of the Court's rulings today, and because Wasson may wish to voluntarily dismiss the federal action in favor of refiling the action in state court, the Court declines to reach defendants' arguments with respect to state law immunities and privileges at this time. If and when Wasson

amends her complaint, defendants may raise these issues in a later motion to dismiss.

### G.

Defendants seek to dismiss Wassons' prayer for attorneys' fees to the extent she seeks fees incurred prior to the filing of this action. Defendants argue that such a request is barred by *res judicata*, because Wasson sought and was denied attorneys' fees in her state court action. The Court declines to rule on this motion at this time. Defendants do not seek to dismiss the entire request for fees, and Wasson does not specifically seek fees for work incurred in the state court action. If Wasson ultimately prevails in this action, and seeks fees for the period prior to the filing of this action, defendants may raise their *res judicata* argument again at that time.

### III.

Defendants also move to disqualify Wasson's counsel because the attorney who represented Agrella in his divorce is now associated with the law firm that is representing Wasson in this action. For the reasons set forth below, this motion is denied.

 The Rules of Professional Conduct of the State Bar of California provide that "[a] member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." Rule of Professional Conduct 3–310(E). The relevant test for disqualification is whether the former representation is substantially related to the current representation. *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir.1980). The relationship is measured by the allegations in the complaint and by the nature of the evidence that would be helpful in establishing those allegations. *Id.* at 1000. If there is a reasonable probability that confidences were disclosed in the former representation that could be used against the client in later, adverse representation, a substantial relation between the two cases is presumed. *Id.* at 998.

The test does not require the former client to show that actual confidences were disclosed. That inquiry would be improper as requiring the very disclosure the rule is intended to protect. The inquiry is for this reason restricted to the scope of the representation engaged in by the attorney. It is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification.

*Id.* at 999 (citation omitted). Once an attorney is found to be disqualified, both the attorney and the attorney's firm are disqualified from suing the former client, whether or not other members of the firm were actually exposed to the information. *Id.*

 Margaret England ("England") represented both Agrella and his wife in their divorce proceedings in 1995, when she was a sole practitioner. On March 15, 1997, after her work on the divorce had been concluded, England joined the law firm of Lanahan & Reilley. Martin T. Reilley and Teresa J. Norton of Lanahan & Reilley represent Wasson in this action against Agrella and others. England has never worked on Wasson's case against Agrella. She does not have access to those files and has never attended any meetings related to that action.

During the period England was representing Agrella, the first two of the letters that are at issue in this case were distributed. Those letters attack Agrella's competency to be president of Santa Rosa Junior College, and accuse him of racism and adultery, among other accusations. Agrella contends that England may have had discussions with his wife about the veracity of these allegations. England avers, however, under penalty of perjury, that she never discussed with Agrella or his wife anything having to do with the controversy about the letters, and never discussed whether either party was having an extra-marital affair. The divorce was uncontested, and England served only as a facilitator to memorialize their settlement agreement.

The overlap between the Agrellas' divorce proceedings and Wasson's action in this Court is quite small. The letters that are the core of the instant action accuse Agrella of

misconduct in a variety of areas, only one of which (adultery) is likely to be raised by the participants in a divorce proceeding. The truth or falsity of this allegation is not a necessary element of any of Wasson's claims. Even assuming that the letters, in their entireties, contain entirely true allegations and are found to constitute speech that is protected under the First Amendment, defendants' actions in attempting to terminate Wasson still may have been lawful if dissemination of the letters was sufficiently disruptive to the operation of the college. *Connick v. Myers,* 461 U.S. at 150–51, 103 S.Ct. 1684. Thus, the real battleground in this litigation is likely to be over the disruptive effects of the letters, rather than their veracity.

Moreover, England swears under penalty of perjury that she never discussed anything about the letters controversy with the Agrellas. As the divorce proceeding was uncontested, and England was representing both sides in the proceeding, the Court has no reason to question England's declaration.

The Court is satisfied that the two actions are not substantially related, and that England did not obtain confidential information relevant to the current action. Accordingly, defendants' motion to disqualify Wasson's counsel is denied. Nonetheless, as a safeguard, the Court orders Wasson's counsel to continue to maintain an ethical wall barring England from any participation in this litigation, however minimal; barring her from all access to any documents relating to this litigation; and barring her from discussing the litigation with any personnel at Lanahan and Reilley.

### IV.

Accordingly,

IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART, as follows:

a. All claims against the District and Governing Board are DISMISSED as barred by the Eleventh Amendment, without prejudice to refiling in state court.

b. All *federal* claims against the individual defendants in their official capacities are DISMISSED as barred by the Eleventh Amendment to the extent Wasson seeks an award of damages, without prejudice to refiling in state court.

c. All *state law* claims against the individual defendants in their official capacities are DISMISSED as barred by the Eleventh Amendment to the extent Wasson seeks injunctive relief, without prejudice to refiling in state court.

d. All claims against Roberts and Mitchell are DISMISSED, with leave to amend.

e. All § 1983 claims based on violations of the California Constitution or state law are DISMISSED WITH PREJUDICE.

f. Defendants' motion to dismiss the § 1983 claim for violation of the First Amendment, based on qualified immunity, is DENIED.

g. Defendants' motion to dismiss the First Amendment claim for lack of standing and mootness is DENIED.

h. Wasson's § 1983 claim for violation of the Fourth Amendment for an allegedly unlawful search of Wasson's personnel files and computer is DISMISSED WITH PREJUDICE.

i. Wasson's § 1983 claim for deprivation of Wasson's property interest in her employment in violation of the procedural due process guaranteed by the Fourteenth Amendment is DISMISSED WITH PREJUDICE.

j. Wasson's § 1983 claim for deprivation of Wasson's liberty interest in her employment in violation of the procedural due process guaranteed by the Fourteenth Amendment is DISMISSED, with leave to amend.

k. Wasson's § 1983 claim for violation of the privacy rights protected by the Fourteenth and Ninth Amendments by disclosing information from her personnel and computer files to the public is DISMISSED, with leave to amend.

l. Wasson's claims for breach of contract, and tortious breach of the covenant of good faith and fair dealing, against the individual defendants are DISMISSED WITH PREJUDICE.

m. Wasson's claim for common law invasion of privacy is DISMISSED, with leave to amend.

n. Defendants' motion to dismiss Wasson's claims for negligent and intentional infliction of emotional distress as barred by the exclusivity provisions of California Workers' Compensation law is DENIED.

o. Defendants' motion to dismiss Wasson's state law claims as barred by various state law immunities and privileges is DENIED, without prejudice to reasserting these arguments if and when Wasson files an amended complaint.

p. Defendants' motion to dismiss Wasson's prayer for attorney's fees incurred prior to the filing of this lawsuit is DENIED, without prejudice.

2. Defendants' motion to disqualify Wasson's counsel is DENIED.

3. Wasson shall prepare and file an amended complaint on or before December 29, 1997, in accordance with the foregoing rulings.