Michael R. SIMONSON, Appellee,

v.

IOWA STATE UNIVERSITY, Camilla
Benbow, Carla Espinoza and
John Kozak, Appellants.

No. 97–1177.

Supreme Court of Iowa.

Dec. 22, 1999.

Thomas J. Miller, Attorney General, Elizabeth Osenbaugh, Solicitor General, and Diane M. Stahle, Assistant Attorney General, for appellants.

Stephen M. Terrill of Terrill & Martens Law Offices, Ames, for appellee.

Considered by McGIVERIN, J., and CARTER, LAVORATO, NEUMAN and TERNUS, JJ.

McGIVERIN, Chief Justice.

The main question here is whether a tenured state university professor has a constitutional right to an evidentiary hearing before the university can place him on paid administrative leave pending an investigation of student sexual harassment complaints against him.

The university appeals a district court decision requiring it to hold such a hearing. Upon our review, we reverse.

## I. Background facts and proceedings.

### A. Placement on paid administrative leave.

On February 10, 1997, Camilla Benbow, acting Dean of the College of Education at Iowa State University (ISU or University), was advised by Richard Zbaracki, Chair of the Department of Curriculum and Instruction, that a student in that college was planning to file a sexual harassment complaint against tenured Professor Michael R. Simonson. The student had talked to her "sexual harassment assistor" (an individual in the department charged with giving confidential advice and counsel to students on sexual harassment matters), as well as to two other faculty members about filing a complaint. The student had also dropped out of a program with which Simonson was connected.

Later, on February 11, two staff members informed Daniel Reschly, Associate Dean of the College of Education, that they had a conversation with a graduate student who was concerned about sexual harassment by Simonson and that the student was concerned about retaliation for having spoken out. The two staff members did not discuss the specific nature of the complaints, but did tell Reschly that the allegations against Simonson were "extremely serious."

Reschly immediately informed Benbow of his conversation with the two staff members. That same day Benbow advised Provost John Kozak of the matter and also talked about it with ISU Director of Affirmative Action, Carla Espinoza.

Also on February 11, another member of the faculty, Ann Thompson, informed Benbow that in September 1996, a student had raised concerns to her about Simonson's behavior, but the student had never filed a complaint. Thompson indicated that the student may now be willing to come forward. Thompson also informed Benbow of an incident where Simonson had arrived at a student's house drunk although the student had told him she did not want him to come to her home. The complaining student told Thompson that Simonson had confronted her and another student, trying to find out who might be filing complaints against him, and that she was terrified. Thompson also stated that certain students had witnessed inappropriate behavior by Simonson at conferences, and that the students were afraid to come forward because they were concerned about retaliation.

Later that day, a meeting was held in Espinoza's (Director of Affirmative Action) office. Persons present included Espinoza, a complaining student and her attorney, the sexual harassment assistor, and Hessie Harris, associate legal counsel for the University. The complainant gave Espinoza the names, dates, and description of events relating to the alleged incidents of sexual harassment by Simonson.

Following the meeting, Espinoza called Benbow and told Benbow that she felt the complaint should be investigated and that some immediate action should be taken. Espinoza recommended that Simonson be placed on administrative leave with pay and that authorization for his imminent trip to a conference in New Mexico be withdrawn.

Later that evening of February 11, Dean Benbow informed Simonson by telephone that a formal complaint of sexual harassment had been made against him and that he was being placed on paid administrative leave pending the outcome of the investigation. Benbow also told Simonson that the University was rescinding its approval for him to attend the conference in New Mexico. According to Benbow, this decision was based on concerns that an important witness and potential complainant was scheduled to attend the conference and that the University may be at risk if it allowed Simonson to attend the conference in light of the sexual harassment allegations.

On February 13, Dean Benbow wrote to Simonson confirming the telephone call and stating that a formal complaint had been filed. The letter imposed several restrictions concerning Simonson's teaching and other duties. Specifically, Simonson was required to turn in his keys to his office and was advised to have no contact with students and not to come to campus unless for an approved visit.

On February 13, the student filed a formal written complaint with the Affirmative Action Office. The student later retrieved the complaint to add more information.

On February 14, Simonson appeared at the Provost's office with a letter demanding that an appeal of his suspension be heard by 4:00 p.m. that day. The Provost, John Kozak, was out of town. Simonson then requested that Associate Provost Edwin Lewis hear his appeal that day.

Later that day, a meeting was held in Lewis' office attended by Lewis, Benbow, Hessie Harris (acting as attorney for Benbow and Espinoza) attorney Paul Tanaka (attending as "legal advisor" for Lewis), Simonson and his attorney. Lewis postponed making a decision on Simonson's appeal until Provost Kozak returned.

On February 17, six days after being placed on paid administrative leave, Simonson received a copy of the written complaint of sexual harassment.

On February 18, the Provost denied Simonson's appeal of Benbow's decision placing him on paid administrative leave, but adjusted some of the restrictions concerning Simonson's administrative duties.

On February 24, Simonson appealed the Provost's decision to the Faculty Senate Committee on Judiciary and Appeals. Thereafter, the University Faculty Senate Committee formed an ad hoc subcommittee to consider Simonson's appeal. After an investigation, the ad hoc subcommittee of the Faculty Senate submitted its report to the full committee on March 17.

### B.   The present action.

Simonson filed a petition, as amended, for judicial review in district court on March 19, against respondents Iowa State University, Benbow, Espinoza and Kozak, alleging that he had been deprived of property and liberty interests protected by the Due Process Clauses of the United States and Iowa Constitutions. See U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 9. Simonson sought reinstatement to his teaching duties at ISU. For simplicity, we will refer to respondents collectively as ISU or the University, unless otherwise necessary.

On March 26, the Faculty Senate Committee met and unanimously adopted the ad hoc committee's report that recommended reinstatement of Simonson. The committee's report was delivered to University President Jischke on March 31 for his review and action.

A hearing was held in district court on April 11, 1997, concerning Simonson's petition.

President Jischke eventually rendered his decision on April 21, and rejected the recommendation of the Faculty Senate that Simonson be taken off administrative leave pending the completion of the investigation. By consent of the attorneys for the parties, President Jischke's decision was submitted as part of the record before the district court to be considered in ruling on Simonson's petition.

On May 9, 1997, the district court issued its decision, concluding that the University had deprived Simonson of a protected property and liberty interest without due process of law. The case was remanded to the University with instructions that the University give Simonson a hearing, with notice of the allegations against him, the right to hear and cross-examine those witnesses complaining against him, and the right to present evidence on his own behalf. The district court also ordered that Simonson should be reinstated to his rights and duties as a full, tenured professor.

The University appeals the district court's decision that it was required to give Simonson a full, evidentiary-type hearing prior to placing him on paid administrative leave. The University does not contend that Simonson failed to exhaust any administrative remedies.

Plaintiff Simonson filed before us a motion to amend the record and dismiss the appeal. We ordered that the motion be submitted with the appeal. After due consideration, the motion is overruled.

### II.   Standard of review.

The parties seem to agree that Simonson sought relief in district court pursuant to the judicial review provisions of Iowa Code chapter 17A (1997). Specifically, Simonson sought judicial review of the University's (i.e., agency) decision to place him on paid administrative leave pending inves-

tigation of the sexual harassment complaints against him without a prior evidentiary hearing.

Under Iowa Code chapter 17A, an agency's action is characterized as rule-making, contested case or other agency action. *Hurd v. Iowa Dep't of Human Servs.*, 580 N.W.2d 383, 388 (Iowa), *cert. denied,* —— U.S. ——, 119 S.Ct. 455, 142 L.Ed.2d 408 (1998). A review of the record suggests that the action taken by the University in placing Simonson on paid administrative leave falls into the category of "other agency action."

■ Our review of a district court's judicial review ruling is ordinarily for correction of errors at law. *Bennett v. Iowa Dep't of Natural Resources,* 573 N.W.2d 25, 27 (Iowa 1997). When constitutional issues are raised, however, we must make an independent evaluation of the totality of the evidence and our review in such cases is de novo. *Office of Consumer Advocate v. Iowa State Commerce Comm'n,* 465 N.W.2d 280, 281 (Iowa 1991).

We apply the standards of section 17A.19(8) to assess whether our conclusions are the same as those reached by the district court. *Mortimer v. Fruehauf Corp.,* 502 N.W.2d 12, 14 (Iowa 1993). Upon our review, we may affirm, reverse, modify or grant any other appropriate relief, equitable or legal. Iowa Code §§ 17A.19(8), 17A .20.

The operative question on judicial review in the present case is whether substantial rights of the petitioner have been prejudiced because the University's action (i.e., the agency) is in alleged violation of constitutional or statutory provisions. *See* Iowa Code § 17A.19(8)(a).

### III. Was a protected right of Simonson infringed by the University's actions?

■ The main issue in this appeal is whether Simonson was entitled to a hearing before he was placed on paid administrative leave.

■ A government employee is entitled to constitutional procedural due process only when the employee has been deprived of a protected property or liberty interest. *See Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972). Once it is determined that an employer's decision implicates a protected property or liberty interest, the court must then determine what process is constitutionally due, or whether a hearing is required in a given case, by balancing three competing interests: (1) the private interest affected by the official action; (2) the governmental interest; and (3) the risk that erroneous deprivation of the private interest will occur, using the current procedures and the probable value, if any, of additional or substitute procedural safeguards. *Gilbert v. Homar,* 520 U.S. 924, 931, 117 S.Ct. 1807, 1812, 138 L.Ed.2d 120, 128 (1997); *Callender v. Skiles,* 591 N.W.2d 182, 189 (Iowa 1999).

The first step in our analysis is to determine whether the University's action in placing Simonson on paid administrative leave deprived Simonson of a constitutionally protected property or liberty interest.

### A. Was Simonson deprived of a property right?

At this point in our discussion, we believe it helpful to clarify that Simonson was not suspended, but rather was placed on paid administrative leave pending the investigation of the sexual harassment complaint filed against him.

### 1. Applicable law.

■ Public employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process. *Gilbert,* 520 U.S. at 929, 117 S.Ct. at 1811, 138 L.Ed.2d at 126. A person must have a legitimate claim of entitlement to his or her employment to have a property interest in it. *Roth,* 408

U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. "When such a property interest exists, the employee is entitled to a hearing or some related form of due process before being deprived of the interest." *Winegar v. Des Moines Ind. Community Sch. Dist.*, 20 F.3d 895, 899 (8th Cir.1994).

■■■ "Property interests 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Bennett v. City of Redfield*, 446 N.W.2d 467, 472 (Iowa 1989) (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561). A property interest typically arises from contractual or statutory limitations on the employer's ability to terminate an employee or can also be created by implied contract, arising out of customs, practices, and de facto policies. *Winegar*, 20 F.3d at 899 (parties agreed that high school teacher had protected property interest in employment by virtue of teacher's continuing contract under Iowa Code §§ 279.13–.19 relating to contracts with teachers). Thus, to determine whether a public employee has a property interest in continued employment, we look to state law and any contractual rights Simonson may have. *See Bennett*, 446 N.W.2d at 472; *Wagner v. Texas A & M Univ.*, 939 F.Supp. 1297, 1311–12 (S.D.Tex.1996) (stating that where employee did not claim deprivation of compensation, state law and any contractual rights must be examined to determine whether employee had property interest in ability to continue to perform job duties).

In this case, Simonson was not deprived of any economic benefits because he was placed on paid administrative leave. Cases from other jurisdictions have concluded that a government employee has no constitutionally protected property interest in actually performing his or her job and thus an employee's due process rights are not implicated so long as he or she continues to receive pay and benefits. *See Harris v. Board of Educ.*, 105 F.3d 591, 596–97 (11th Cir.1997) (school board was entitled to qualified immunity where it relieved superintendent of duties while continuing to pay salary; public employee has only a constitutionally protected property interest in economic benefits of his position and does not have any right to actually hold the position and execute the duties of the office); *City of Annapolis v. Rowe*, 123 Md.App. 267, 717 A.2d 976, 988 (1998) (firefighter who was suspended with pay had no constitutionally protected property interest in actually performing his job, was not deprived of due process, and was not entitled to presuspension hearing), *and cases cited therein*.

Other cases have held, however, that even though the employee is not deprived of the economic benefits of the job, an employee has a constitutionally protected property right in continuous employment by virtue of certain statutorily created procedural rules concerning suspension or demotion. *See Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994) ("Although procedural requirements ordinarily do not transform a unilateral expectation into a protected property interest, such an interest is created if the procedural requirements are intended to be a significant substantive restriction on ... decision making.") (quotations and citations omitted); *Winegar*, 20 F.3d at 899 (the parties agreed that a high school teacher had a protected property interest in his employment by virtue of his continuing contract under Iowa Code §§ 279.13–.19 prescribing procedures for teacher termination or nonrenewal of teacher contracts, culminating with a hearing before the school board); *Division of Family Servs. v. Cade*, 939 S.W.2d 546, 553 (Mo. Ct.App.1997) (Missouri statutes which require written notice be given to employees who are to be suspended for more than five days, and permit suspension only for certain causes, give government employees a property interest in jobs); *Arneson v. Jezwinski*, 225 Wis.2d 371, 592 N.W.2d 606, 618–19 (1999) (state university employee had protected property interest in

wages and in continuous employment with university under state statute prescribing that civil service employees may be removed, suspended without pay or discharged only for just cause).

### 2. Application of law to facts.

In this case, Simonson was placed on paid administrative leave and thus he was not deprived of any economic benefits while the University investigated the sexual harassment complaints against him. The district court concluded, however, that Simonson's property interest in continued employment as a tenured professor is guaranteed by his contract with the University and the Board of Regents and by the following provisions of Iowa Administrative Code rule 681–9.1 relating to "Policies, Practices and Procedures" of the State Board of Regents: [1]

10. "*Suspension* of a member of the faculty or staff" means that during a specified period of time, the member of the faculty or staff is not eligible to continue as an employee of the university, or to resume employment status . . . .

. . . .

C. *Sanctions*

1. Any student or member of the faculty or staff who is found *after appropriate hearings* to have violated any of the rules of personal conduct . . . may be sanctioned up to and including *suspension*, expulsion or dismissal.

. . . A *faculty* or staff *member* [professor] *who is suspended shall receive no salary* during the period of suspension; provided, however, that the faculty member shall be paid for work done prior to the date of the suspension order.

*Appropriate hearings* as used throughout these rules *means pursuant to existing hearing procedures in effect at the university* for students and members of the faculty and staff.

1. The provisions of Iowa Administrative Code rule 681–9 relating to Policies, Practices and Procedures for the Board of Regents have

(Emphasis added.) The University's personnel policies make no reference concerning when a professor may be placed on paid administrative leave, whether a hearing is required before doing so, or whether such action constitutes a sanction.

According to the University's personnel policies, a faculty member may be sanctioned "*after appropriate hearings.*" As noted above, the phrase "may be sanctioned" includes ·*suspension*, expulsion or dismissal *without pay.* Thus, by inference, a faculty member who is placed on administrative leave *with pay* is not suspended as that term is defined in the University's personnel policies. We believe that the phrase "may be sanctioned" is suggestive of disciplinary action that is taken after a formal investigation is completed and would not include the decision to place a professor on paid administrative leave made at the initial stages of an investigation into sexual harassment complaints. Additionally, any sanction imposed on Simonson affecting his tenure would come after the University held proceedings concerning the merits of the sexual harassment complaints. Thus, assuming without deciding that the University's procedural rules concerning *suspension* create a property interest in employment which entitles a professor to an "appropriate hearing" prior to suspension, those procedural rules would not seem to apply to the University's decision to place a professor on paid administrative leave.

We, therefore, conclude that nothing in ISU's personnel policies or rules regarding suspension of employees gives Simonson a protected property interest entitling him to a hearing prior to being placed on paid administrative leave pending investigation of the complaints against him. Thus, Simonson was not deprived of a protected property interest, in the form of an economic benefit or otherwise, when he was

been adopted by the University and form the basis of the University's "Personnel General Policies."

placed on paid administrative leave. *See Harris*, 105 F.3d at 596–97; *City of Annapolis*, 717 A.2d at 988. We reverse the decision of the district court on this issue.

## B. Did Simonson have a protected liberty interest at stake?

The University also contends that the district court wrongfully concluded that the stigma Simonson allegedly suffered as a result of being placed on paid administrative leave was serious enough to implicate his liberty interests. The district court made no conclusions concerning whether University officials had publicized the reasons for the suspension.

### 1. Applicable law.

■ A state may deprive an employee of his or her liberty interest by damaging the employee's reputation so severely that associational or employment opportunities are impaired or foreclosed. *Bennett*, 446 N.W.2d at 470. We have said that in order to establish a liberty interest due process claim in connection with termination from employment, the employee must prove the following:

> that the employer published false, stigmatizing charges in connection with the discharge which were denied by the claimant and which seriously damaged the [employee's] employment opportunities or standing and associations in the community, all without notice and opportunity to be heard in a name clearing hearing requested by the [employee].

*Bennett*, 446 N.W.2d at 471 (footnotes and citations omitted). We assume that the same rules apply when an employee is placed on paid administrative leave pending investigation of sexual harassment complaints against an employee.

■ "An employee's liberty interests are implicated when the employer levels accusations at the employee which are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." *Shands v. City of Kennett*, 993 F.2d 1337, 1347 (8th Cir.1993).

The requisite stigma will be found when an employer has accused an employee of dishonesty, immorality, criminality, racism, and the like. *Winegar*, 20 F.3d at 899.

■ "Liberty interests are not violated by the private disclosure of reasons for discharge from public employment 'when there is no public disclosure of the reasons for the discharge.'" *Poynton v. Special Sch. Dist. of St. Louis County*, 949 F.Supp. 1407, 1414 (E.D.Mo.1996) (quoting *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684, 692 (1976)); *see also Bennett*, 446 N.W.2d at 471. "Unpublicized accusations do not infringe constitutional liberty interests because by definition, they cannot harm the employee's good name, reputation, honor, or integrity." *Wasson v. Sonoma County Junior College*, 4 F.Supp.2d 893, 907 (N.D.Cal. 1997).

### 2. Application of law to facts.

Upon our review, we find no evidence in the record that any of the University officials involved in the investigation of the sexual harassment complaints against Simonson publicly disclosed the reasons why Simonson was placed on paid administrative leave. We note that there is some evidence in the record that faculty members—not University officials involved in the investigation—made comments overheard by students to the effect that Simonson "would not be back" or otherwise disclosed that the charges against Simonson were sexual harassment. However, we do not believe these comments constituted a public disclosure by University officials that would cause a violation of any liberty interest Simonson had in employment. *Cf. Poynton*, 949 F.Supp. at 1414 (discharged substitute teacher failed to allege or show that defendants made the reasons for his removal public and thus failed to establish a liberty interest that would trigger due process), *and Bennett*, 446 N.W.2d at 471 (terminated city employee failed to show that reasons for discharge were stigmatiz-

ing in nature and thus employee was not deprived of liberty interest due process), *with Winegar*, 20 F.3d at 899, n. 3 (fact that information concerning allegations that high school teacher physically abused student was disseminated to the point that an outside private investigator was hired and students were interviewed satisfied the publication requirement and was sufficient to implicate teacher's liberty interests). We therefore conclude that Simonson was not deprived of a constitutionally protected liberty interest when the University placed him on paid administrative leave pending the investigation of the sexual harassment complaints against him.

### C. Summary.

We conclude, that apart from any economic benefits, Simonson did not have a protected property interest in continuing to perform his duties as a professor and thus was not deprived of such property interest when he was placed on paid administrative leave pending the investigation of the sexual harassment complaints against him. *See* Iowa Code § 17A.19(8)(a). The University's actions did not amount to a *suspension* as contemplated by the University's rules because Simonson was not deprived of economic benefits while on administrative leave. We also conclude that the University did not deprive Simonson of a constitutionally protected liberty interest. *See* Iowa Code § 17A.19(8)(a). In light of these conclusions, we need not proceed further to examine the level of due process to which Simonson may have been entitled.

We also point out that, as a policy matter, the University had a significant interest in acting quickly to remove an employee, who was in a position of public trust, from teaching duties. First, ISU's policy on sexual harassment imposes a duty on the University administrators to respond to sexual harassment complaints brought to their attention. Second, the statements made by the complaining student concerning inappropriate behavior by Simonson

were corroborated by other students who had witnessed inappropriate behavior by Simonson at conferences. The University had to view the allegations seriously because the complainant student had retained counsel and had already filed a complaint with the Iowa Civil Rights Commission. Other students also expressed fear of Simonson and were concerned with potential retaliation. Placing Simonson on paid administrative leave was a way the University could protect students, while at the same time ensuring that Simonson continued to receive the economic benefits of his position.

In view of our resolution of the issues discussed, we need not address other issues raised by the parties.

### IV. Disposition.

We conclude that Simonson did not have a constitutionally protected property or liberty interest in his continued teaching duties as a professor at Iowa State University that was implicated when the University placed him on paid administrative leave pending the University's investigation of sexual harassment complaints against him. Accordingly, Simonson was not entitled to an evidentiary hearing before the University made the decision to place him on paid administrative leave. Upon our review, we also conclude that the University's decision to place Simonson on paid administrative leave pending investigation of the sexual harassment complaints against him was not in violation of any constitutional or statutory provision urged by petitioner. *See* Iowa Code § 17A.19(8)(a). Accordingly, we reverse the decision of the district court and affirm the action of the University.

**REVERSED.**