Ms. Mary Kincy Benefield, Reporter The Courier 201 East Second Street Post Office Box 887 Russellville, Arkansas 72811-0887
Dear Ms. Benefield:
I am writing in response to your request, made pursuant to A.C.A. §25-19-105(c)(3)(B), for an opinion on whether the custodian of records at the Russellville Police Department has correctly determined to withhold certain records in response to your Arkansas Freedom of Information Act ("FOIA") request. Specifically, you note that you requested records related to an incident involving a specified individual and a former Russellville police officer in which the individual "may have been struck by a police vehicle. . . ." You state that you also requested "all employee evaluation or job performance records which may have formed a basis to suspend or terminate [the officer]." You state that the custodian of the records declined to release the records after consultation with the City Attorney, basing the decision on A.C.A. §25-19-105(c)(1), which provides for the release of "all employee evaluation or job performance records, including preliminary notes and other materials . . . only upon final administrative resolution of any suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in disclosure." With regard to whether there has been a suspension or termination so as to trigger this provision, you state that the former officer "did resign from his position with the RPD after the department initiated an internal investigation of the incident in question, and was not terminated. . . ." You also state, however, that the Police Chief "has confirmed [that the officer] was placed on `administrative leave' in the immediate aftermath of the incident." You state *Page 2 
that the Police Chief claims the requested records do not fall under FOIA "as [the officer] was never suspended without pay." You state that "we feel as though the fact that Mr. Dyer was placed on administrative leave, i.e. suspended, does qualify the records we have requested for release under the FOIA." You thus request my opinion under A.C.A. §25-19-105(c)(3)(B) as to the correctness of the custodian's decision in this regard.[1]
RESPONSE
My statutory duty under A.C.A. § 25-19-105(c)(3)(B) is to opine as to whether the decision of the custodian is consistent with the FOIA. In my opinion, questions of fact may come into play in determining whether the administrative leave in question constituted a "suspension" for purposes of A.C.A. § 25-19-105(c)(1). There is unfortunately no helpful Arkansas case law precisely on point. Assuming, however, that the officer was placed on administrative leave with pay pursuant to routine departmental policy, pending any disciplinary action, and later voluntarily resigned, in my opinion the custodian's decision is consistent with the FOIA. If facts show that the administrative leave was without pay, or that the officer was otherwise subjected to loss of benefits, or other disciplinary measures, the facts may indicate the "administrative leave" was in fact a suspension. *Page 3 
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2005). Given that the subject of the record is a former city employee, I believe that the records requested clearly qualify as "public records" under this definition. As one of my predecessors noted in Op. Att'y Gen. No. 1999-305, "If records fit within the definition of `public records' . . . they are open to public inspection and copying under the FOIA except to the extent they are covered by a specific exemption in that Act or some other pertinent law." Id. at 2.
As you note, the pertinent exemption in this instance appears to be A.C.A. § 25-19-105(c)(1), which exempts "all employee evaluation or job performance records, including preliminary notes and other materials" unless there has been a "final administrative resolution" of any "suspension or termination proceeding" at which the records "form a basis" for the decision to suspend or terminate the employee and unless there is a "compelling public interest in disclosure." My predecessors and I have thus stated that "employee evaluation or job performance records" are releasable only if the following three conditions have been met:
 1. There has been a final administrative resolution of any suspension or termination proceeding;
 2. The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and *Page 4 
 3. There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1).
Records relating to internal investigations are in many cases properly classified as "employee evaluation or job performance records." As my predecessor stated in Op. Att'y Gen. 2004-178:
 Although, again, I am not certain what records are contained in the requested internal affairs files, these types of files typically contain records related to an internal investigation of an employee's involvement in a particular event. This office has consistently taken the position that records in an internal affairs file that have been generated at the behest of the employer in the course of investigating a complaint against an employee constitute "employee evaluation/job performance records." Their releasability must therefore be evaluated under the three-part test discussed above. See, e.g., Op. Att'y Gen. No. 2001-063. However, records related to an internal investigation that were not created at the behest of the employer (such as an unsolicited complaint) are classified as "personnel records," and their releasability must be evaluated under the test that is applicable to that type of record. . . . Id.
Id. at 5.
I have not been provided the records in question in this regard, so I cannot determine conclusively whether the records you have requested are in fact properly classified as "employee evaluation or job performance" records so as to make applicable the three-part test described above. Assuming the records are properly classified as such, however, the pertinent inquiry is whether there has been a "suspension" or "termination" such that the first prong of the applicable test has been met. My predecessors and I have recognized that a suspension or termination is a "threshold" requirement for the release of employee evaluation or job performance records. Ops. Att'y Gen. 2007-025; 2006-150; 2005-267; 2001-125; 97-189 and 97-154. The issue in this instance apparently centers around the *Page 5 
question of whether the officer in question was "suspended" because he was placed on administrative leave with pay before subsequently resigning.
I have not found any controlling Arkansas case law on this point. In my opinion, however, if the officer was placed on administrative leave with pay pursuant to routine departmental policy, pending any disciplinary action, and later voluntarily resigned, that action likely does not constitute a "suspension" for purposes of A.C.A. § 25-19-105(c)(1). If facts show the administrative leave was without pay, or otherwise subjected the officer to loss of benefits, or other disciplinary measures, the facts may indicate the "administrative leave" was in fact a suspension. The question in my opinion will be one of fact in each instance.
Three factors lead me to this conclusion.
First, my predecessor had an opportunity to address a similar issue in Op. Att'y Gen. 2006-038. In that opinion, at issue were records pertaining to a former business manager of a school district who the reporter requesting the opinion described as having been placed on administrative leave before her subsequent resignation. Counsel for the school district, however, characterized the sequence of events as an "initial suspension and subsequent resignation." Id. at 8. In light of this difference, my predecessor stated:
 Based upon the factual recitation you have provided, there appears to be a question as to whether the business manager was indeed `suspended" in this instance. I am struck by the distinction between your characterizing the former employee's initial absence as an "administrative leave" and the District's counsel characterizing it as a "suspension." As noted in my text, an employee evaluation/job performance record will be subject to disclosure only if, inter alia, the document formed a basis for a suspension or termination. In considering whether to release any documents that might qualify as employee evaluation/job performance records, the custodian will need to determine whether the business manager was, as the District's counsel suggests, indeed suspended.
Id. at 8. *Page 6 
The distinction made above between "suspension" and "administrative leave" indicates that the two actions may not be synonymous. In Op. Att'y Gen. 2006-038, the matter was thus left to the custodian of the records to determine as a factual matter whether a "suspension" had occurred.Cf. also Op. Att'y Gen. 2006-035 (discussing police chief's "leave of absence" and subsequent resignation and concluding that it was a question of fact whether they actually constituted a "negotiated suspension and termination," but noting that "this office has previously opined on numerous occasions that a voluntary resignation in the face of a disciplinary challenge does not equate to a suspension or termination.").
Second, construction of the applicable statutory language of the exemption supports the conclusion that "administrative leave" may not in every case amount to a "final administrative resolution" of a "suspension or termination proceeding." The primary rule of statutory construction is to give effect to the intention of the General Assembly. Knowlton v.Ward, 318 Ark. 867, 889 S.W.2d 721 (1994). The Arkansas Supreme Court will look to the plain language of a statute in determining legislative intent. McMickle v. Griffin, 369 Ark. 318, ___ S.W.3d ___ (2007). The applicable exemption requires that the records in question form a basis for a decision to "suspend" or terminate the employee and that they be released only upon "final administrative resolution" of the suspension proceeding. The question is thus whether placing an employee on "administrative leave" with pay at the outset of an internal investigation is itself a "suspension" for purposes of § 25-19-105(c)(1), where the employee later resigned.
I have found no helpful precedent in Arkansas on this question, or any precedent specifically addressing the issue in the context of freedom of information or open records law. Courts in varying contexts, however, have concluded that administrative leave under such circumstances does not invariably result in a "suspension." See, e.g., Cisneros v. Colorado,2007 WL 2746756 (D.Colo. 2007) (noting that plaintiff in Title VII employment discrimination claim was "not suspended from work, but rather was placed on administrative leave" and that this was not an adverse employment action, relying on Joseph v. Leavitt, 465 F.3d 87 (2nd Cir. 2006)); Martone v. Johnston School Committee, 824 A.2d 426 (Rhode Island 2003) (teacher was not "suspended" for purposes of entitlement to a hearing by being placed on leave with pay pending an investigation of sexual harassment allegations); Simonson v. Iowa State University,603 N.W.2d 557 (Iowa 1999) (university professor was not "suspended, but rather was placed on paid administrative leave pending investigation of sexual harassment complaint, relying *Page 7 
on wording of university's personnel policies and holding that language was suggestive of disciplinary action that would occur after the initial stages of investigation and after proceedings were held on the merits of the sexual harassment allegations). See also generally, Joseph v.Leavitt, supra (administrative leave with pay during pendency of criminal charges and for five months thereafter does not constitute an "adverse employment action" for purposes of Title VII race discrimination case by federal employee, relying on four other federal circuit decisions to the same effect and stating that an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner);[2] Singletary v. Missouri Department of Correction,423 F.3d 886 (8th Cir. 2005) (administrative leave with pay was not an "adverse employment action" for purposes of Title VII discrimination claim, where state employee was never given leave without pay, his benefits and pay rate were never reduced, and his hours, job duties, and title were never changed). But see contra, Miller v. Journal-News,211 A.D.2d 626, 620 N.Y.S.2d 500 (1995) (police officer could not maintain action against newspaper for publishing that he was "suspended" because that assertion was substantially true since terms "suspended" and placed on "administrative leave" were interchangeable given the underlying facts).
In my opinion the case law cited above indicates that an initial period of administrative leave with pay pending the conduct of an investigation does not itself constitute a "suspension."
Third, in my opinion the reason behind the A.C.A. § 25-19-105(c)(1) exemption does not support its application to the facts you describe. It has been stated that the exemption's requirements that records relate to a suspension or termination and that they be released only at the conclusion of a suspension or termination proceeding "are designed to ensure that such records are not released prematurely and that disclosure will be made only when they are relevant to employee performance sufficiently deficient to merit suspension or termination." Watkins and Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (4th Ed. m m Press 2004) at 201. See also, 1987 Ark. L. Notes 59 (1987). If the officer in question was placed on administrative leave with pay as a matter of routine departmental *Page 8 
policy, pending the investigation of the incident, it appears that no determination has been made at that juncture that the officer's performance was sufficiently deficient to merit suspension. That determination is, rather, the ultimate purpose of the ensuing investigation. See Simonson, supra.
In my opinion, therefore, if the administrative leave in question was granted with pay, as a matter of routine police department policy, pending the outcome of an investigation, those facts do not indicate that a "suspension" has occurred for purposes of the A.C.A. § 25-19-105(c)(1) exemption. Although you have not stated the exact chronology of events, and I am not a fact-finder in this instance, it appears that the officer in question may have resigned after the instigation of the investigation, but before the results thereof, and before any disciplinary action was implemented. My predecessors have stated and I agree, that a subsequent resignation does not prevent a suspension from becoming final. (Ops. Att'y Gen. 2006-038; 2005-030; and 2002-158.) But there must actually be a "suspension" prior to employee evaluation or job performance records being released on that basis. See again, Op. Att'y Gen. 2006-035 (noting that a voluntary resignation in the face of a disciplinary challenge does not equate to a suspension or termination). As noted above, if the administrative leave was granted with pay, and as a part of a routine practice pending the investigation, and was not disciplinary in nature, I cannot conclude that a "suspension" has occurred. If these are the relevant facts, in my opinion the decision of the custodian is generally consistent with the FOIA. Again, however, the issue is ultimately a question of fact.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] You also state that the Police Chief has informed you that "as a condition of [the officer's] resignation, any records collected or generated during the internal investigation into this incident were included in [the officer's] personnel `jacket' and are therefore inaccessible unless deemed non-exempt from 25-19-105(c)(1) [by the Attorney General's office.]" You state, however, that you "feel as though records from an internal investigation should be released with appropriate redactions to avoid unwarranted invasions of personal privacy, if necessary, and should not be held as exempt from FOIA under guidelines mandated specifically for personnel records." You also request my opinion as to this issue. I can state in this regard that in my opinion, the location of records, whether within or outside of a personnel "jacket," is not dispositive of their proper classification. The proper classification of records depends upon their content, not their location. See, e.g., Pulaski County v. Arkansas Democrat-Gazette, ___ Ark. ___, ___ S.W.3d ___ (07-669, August 31, 2007) (per curiam) and Ops. Att'y Gen. 2006-094; 2006-026; and 2003-359. As discussed more fully below, to the extent internal investigation records were created by or at the behest of supervisors, they are in my opinion properly classified as "employee evaluation or job performance" records and are subject to the three-part test described in this opinion, rather than the "clearly unwarranted invasion of personal privacy" standard set out for "personnel records" at A.C.A. § 25-19-105(b)(12). There is no similar requirement for "redacting" portions of the records to prevent "clearly unwarranted invasion[s] of personal privacy" with regard to "employee evaluation or job performance records." See, e.g., Ops. Att'y Gen. 2007-311 (n. 1); 2005-233 and 2004-012.
[2] This decision relied upon Singletary, infra, Peltier v. UnitedStates, 388 F.3d 984 (6th Cir. 2004); Von Gunten v. Maryland, 243 F.3d 858
(4th Cir. 2001); and Breaux v. City of Garland, 205 F.3d 150 (5th Cir. 2000).