# IN THE COURT OF APPEALS OF IOWA

No. 17-1275
Filed August 1, 2018

**SUSAN SHEELER,**
Plaintiff-Appellant,

**vs.**

**NEVADA COMMUNITY SCHOOL DISTRICT and DR. STEVE GRAY,**
Defendants-Appellees.
_____

Appeal from the Iowa District Court for Story County, William C. Ostlund, Judge.

Susan Sheeler appeals the district court's grant of a directed verdict in favor of defendants on her constitutional claims. **AFFIRMED.**

Andrew J. Zbaracki of Newbrough Law Firm, LLP, Ames, for appellant.

Kirke C. Quinn of Law Office of Kirke C. Quinn, Boone, for appellees.

Considered by Vogel, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

Susan Sheeler appeals the district court's grant of a directed verdict in favor of Nevada Community School District (Nevada) and Dr. Steve Gray in Sheeler's deprivation of rights claim. We find Sheeler was not deprived of her right to due process in her termination hearing and did not have her right against self-incrimination infringed upon. We affirm the district court decision granting a directed verdict.

## I. Background Facts and Proceedings

Susan Sheeler was a contract employee of Nevada from 2000 to 2014. Sheeler, a special education associate at the high school, worked for Nevada under yearly contracts. In April 2014, Nevada offered Sheeler a ten-month contract for the 2014–2015 school year, which she signed. The contract provided for its termination via two weeks' notice by either party and reserved Nevada's right of immediate termination for cause. The school board policy on classified employee dismissal also allowed for dismissal upon two weeks' notice or immediately for cause.

In July 2014, the State filed criminal charges against Sheeler for possessing a controlled substance and possession of drug paraphernalia. Sheeler's arrest, along with the arrest of her daughter and her daughter's boyfriend, appeared in the local newspaper on July 23. Upon reading the article, Dr. Steve Gray, Nevada Superintendent of Schools, requested high school principal Justin Gross speak with Sheeler about the charges. Gross spoke with Sheeler on July 25, but she asked to wait to discuss the matter until she had spoken with an attorney. Then, upon advice of counsel, on July 28 or 29, Sheeler refused to comment to Gross

other than to confirm her arrest. Sheeler did not affirmatively invoke her Fifth Amendment rights during the conversation. Gross asked Sheeler to come in to return her key fob to the classroom and remove any personal items in the room, indicating he expected Gray to recommend termination.

Based on the newspaper article and the discussion between Sheeler and Gross, on July 29, Gray sent Sheeler a letter regarding her employment. Gray suspended Sheeler without pay[1] and stated he would recommend her termination at the school board meeting on August 11 pursuant to school policy permitting termination for a violation of Iowa law. The letter stated Sheeler could have a hearing to contest the recommendation, and asked her to submit a written request for the hearing if she wanted it by 3:00 p.m. on August 6. Gray noted the hearing to contest the recommendation would be closed unless Sheeler requested it be open to the public.

Sheeler did not request a hearing to contest the recommendation as directed in the letter or otherwise respond to the letter. Sheeler did not attend the August 11 school board meeting. The school board terminated Sheeler as Gray recommended. Sheeler did not appeal the board's action.

On September 12, the Story County Attorney dismissed the criminal charges against Sheeler.

Sheeler filed a complaint with the Iowa Civil Rights Commission and U.S. Equal Employment Opportunity Commission. On May 5 and May 16, 2016, respectively, the commissions issued right-to-sue letters. On May 26, Sheeler filed

---

[1] The suspension occurred during the summer and outside the contract period, so Sheeler did not lose any income from the suspension.

a petition in Story County against Nevada, Gray, Gross, and Brian Schaeffer (a Nevada administrator). The petition alleged a deprivation of constitutional rights—including against self-incrimination and due process—age discrimination, sex discrimination, and defamation.

The claims of age discrimination, sex discrimination, and defamation were dismissed before trial, as were claims against Gross and Schaeffer.

On July 11, 2017, the matter proceeded to jury trial on the claim of deprivation of rights against Nevada and Gray. At the close of Sheeler's case, the defendants moved for a directed verdict, which the court denied as to the substantive issues. The next morning, the court ruled Sheeler's dismissal was pursuant to the board of education's rules and decided the proper jury instruction on the due process claim would state "a public employee is not denied her procedural due process right to an opportunity for a pre-termination hearing despite having a constitutionally protected interest in her continued employment when the employee elects not to request such a hearing in order not to incriminate herself in a concurrent criminal investigation." Upon renewal of the defendants' motion for directed verdict, the court granted the motion, holding Sheeler was aware of the opportunity to be heard and made a voluntary decision not to appear.

Sheeler appeals.

## II. Standard of Review

Normally we review a district court's grant of a motion for a directed verdict for correction of errors at law. *Pavone v. Kirke*, 801 N.W.2d 477, 486 (Iowa 2011). "To the extent the violation of a constitutional right is alleged, our review is de novo." *State v. Russell*, 897 N.W.2d 717, 724 (Iowa 2017). Because the issues

decided by directed verdict rest on constitutional rights, our review is de novo. *State v. Cashen*, 789 N.W.2d 400, 405 (Iowa 2010) (reviewing de novo a discovery order), *superseded on other grounds by statute*, 2011 Iowa Acts ch. 8, § 2, *as recognized in State v. Thompson*, 836 N.W.2d 470, 481 (Iowa 2013).

### III.     Analysis

Sheeler claims Nevada and Gray violated her due process rights in the termination of her employment through inadequate procedures and inferences violating her right against self-incrimination.  We address each in turn.

### A.     Property Interest in Continued Employment

Procedural due process requires the government to follow fair procedures before depriving a person of a protected liberty or property interest.  *Bowers v. Polk Cty. Bd. of Supervisors*, 638 N.W.2d 682, 690 (Iowa 2002).  The first inquiry in our due process analysis is whether a protected liberty or property interest is implicated.  *Id.* at 691.  If a deprivation of a protected interest occurred, then we address the process due for the interest.  *Lewis v. Jaeger*, 818 N.W.2d 165, 181 (Iowa 2012).

Sheeler claims a protected property interest in her continued employment under the Fourteenth Amendment of the United States Constitution and Article I, Section 9 of the Iowa Constitution.  A protected property interest in employment is based in contractual or statutory limitations on the employer's termination ability. *Simonson v. Iowa State Univ.*, 603 N.W.2d 557, 561–62 (Iowa 1999).  Sheeler, as a special education associate, was not a licensed employee of the school district and therefore does not fall within the statutory protections and requirements of Iowa Code chapter 279 (2014).  Nor does Sheeler present any other statutory

protections that might apply. Rather, she bases her claim on contractual protections.

Sheeler's contract specifies the coverage period as ten months, corresponding to the school calendar. The arrest and notification—and possibly the termination, depending on the when the ten-month period began—occurred outside the contracted employment period. However, we need not determine if Sheeler had a protected property interest in future employment under the contract, because even if the contract was in effect, the procedure provided by Nevada did not deprive Sheeler of her due process rights.

**B.     Due Process—Investigation and Hearing**

Sheeler claims Nevada denied her due process of law under the Fourteenth Amendment of the United States Constitution and Article I, section 9 of the Iowa Constitution. First, Sheeler claims Nevada violated her due process rights by failing to investigate the charges against her. Second, she claims deprivation of a pre-termination hearing.

As to her investigation claim, Sheeler states Nevada relied solely on the newspaper article in its decision, and no effort to verify the charges or provide her an opportunity to deal with the charges occurred. However, Sheeler testified she told Principal Gross she was indeed the person in the article facing charges.[2]

The Eighth Circuit provides guidance for the necessary proof to establish a federal due process violation based on inadequate investigation. *See, e.g.*, *Folkerts v. City of Waverly*, 707 F.3d 975, 981 (8th Cir. 2013) (discussing the

---

[2]  Gross testified Sheeler had admitted to being the person in the article and then she refused further comment.

factors of inadequate investigation that violate fundamental rights). The failure to investigate must be intentional or reckless and shocking to the conscience. *Cooper v. Martin*, 634 F.3d 477, 481 (8th Cir. 2011). Circumstances indicating a failure to investigate that shocks the conscience include "(1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, [and] (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence." *Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009). "Mere negligent failure to investigate . . . does not violate due process." *Winslow v. Smith*, 696 F.3d 716, 732 (8th Cir. 2012). No evidence indicates any circumstances shocking the conscience relating to the investigation here. Sheeler at most alleges a negligent failure to investigate, as Gray did not seek additional information after Sheeler had confirmed the article was about her. Under federal law, Sheeler's federal due process rights relating to the investigation were not violated.

The due process provisions of the federal and state constitutions are nearly identical, and in the absence of an argument to analyze them differently, we interpret them in a similar fashion. *State v. Seering*, 701 N.W.2d 655, 662 (Iowa 2005), *superseded on other grounds by statute*, 2009 Iowa Acts ch. 119 (codified at Iowa Code ch. 692A). Sheeler cites no Iowa case law supporting a violation based on failure to investigate, and she makes no argument for a separate analysis. As under the federal Constitution, we find no violation of the Iowa Constitution's due process clause based upon inadequate investigation.

Sheeler claims deprivation of a pre-termination hearing. Due process requires notice and an opportunity for hearing prior to the discharge of an

employee with a constitutionally protected property interest in continued employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Bennett v. City of Redfield*, 446 N.W.2d 467, 471 (Iowa 1989) ("The due process requirement is satisfied where the employee is notified of the reasons for discharge and furnished the opportunity of a . . . hearing."). The notice's purpose is to inform the person of the issues involved, preventing surprise at the hearing and allowing an opportunity to prepare. *Wedergren v. Bd. of Dirs.*, 307 N.W.2d 12, 16 (Iowa 1981). The essential requirements are notice and an opportunity to respond prior to termination. *Loudermill*, 470 U.S. at 546; *Bennett*, 446 N.W.2d at 471.

Nevada provided written notice to Sheeler on July 29, informing her the meeting recommending termination would occur on August 11, giving the reason for the recommendation, and offering her a pre-hearing opportunity to request a hearing to contest the termination recommendation, with eight days—until August 6—to make her request.[3] Sheeler testified she knew of the superintendent's intended recommendation to the school board, chose not to request the hearing to contest the recommendation, and chose not to appear at the school board meeting at the time of the recommended termination. Nevada provided notice to Sheeler and offered her an opportunity to present evidence or request a delay in the termination recommendation until after the criminal charges had been resolved.

---

[3] We note the eight days provided is a longer period than the statutory five-day period for a teacher to request a private hearing in similar termination proceedings. *See* Iowa Code § 279.15(2)(c). Moreover, Iowa Code section 279.27 requires hearings for teachers discharged during the contract year for cause to be held within fifteen days of the notification, with the contract terminated effective immediately, which resembles the timeline here.

Sheeler chose not to pursue the opportunities offered to contest the recommendation and termination.

Sheeler's contract with Nevada (and the board's rules) provided for immediate termination of employment for cause, including a violation of law. Nevada provided notice to Sheeler, offered her a private hearing upon request to contest the termination recommendation, and set the date and time of the board's termination consideration if no hearing was requested. Sheeler cannot now claim Nevada denied her due process when it was her choice not to pursue the constitutionally adequate process offered to her.

Upon our review, we conclude Sheeler was not deprived of her due process rights under either the federal or state constitutions.

## C.     Right Against Self-Incrimination

Sheeler claims Nevada inferred guilt from her refusal to speak about the charges with Gross. Sheeler claims this inference violated her constitutional rights against self-incrimination under the Fifth Amendment of the U.S. Constitution.[4]

Generally speaking, to rely on the privilege against self-incrimination, it must be claimed. *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984). The U.S. Supreme Court has recognized few exceptions to the requirement that witnesses invoke the privilege: a criminal defendant refusing to take the stand; where governmental coercion renders forfeiture of the privilege involuntary; and threats to withdraw a governmental benefit. *See Salinas v. Texas*, 570 U.S. 178, 184–85 (2013) (examining exceptions to the requirement of invoking the privilege). The cases

---

[4] "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.

involving the threat to withdraw government benefits, including employment, generally feature a compulsion to answer questions and waive the right or lose employment—i.e. termination for not waiving the right. *See Lefkowitz v. Turley*, 414 U.S. 70, 79-83 (1973) (examining cases reconciling Fifth Amendment with the needs of the state regarding required testimony). We do not find any exceptions to the invocation requirement apply to Sheeler.

Sheeler did not specifically invoke her Fifth Amendment right against self-incrimination, nor was she compelled to waive it. Rather, after admitting she was charged with two crimes, she refused to comment based on advice from counsel with no mention of the Fifth Amendment or self-incrimination. She then chose not to request a hearing to contest the termination and did not go to the termination proceedings, implicitly refusing to testify without invoking her constitutional rights. "The Fifth Amendment privilege against compelled self-incrimination is not self-executing." *Roberts v. United States*, 445 U.S. 552, 559 (1980). When a party simply declines the requested testimony without advancing a constitutional basis for refusing, no constitutional issue exists. *In re Fairbanks*, 287 N.W.2d 579, 581 (Iowa 1980) (holding refusal to take a polygraph without invoking the constitutional basis did not present an issue).

Where the defendant has an opportunity to refuse to answer on Fifth Amendment grounds and fails to do so, the use of noncustodial silence does not violate the Fifth Amendment. *Salinas*, 570 U.S. at 186. "That the defendant faces . . . a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination." *Williams v. Florida*, 399 U.S. 78, 84 (1970). A person's

assertion of constitutional rights may have consequences without resulting in a Fifth Amendment violation. *State v. Iowa Dist. Ct.*, 801 N.W.2d 513, 528 (Iowa 2011) (noting consequences such as loss of custody and loss of eligibility for earned-time credits do not result in Fifth Amendment violations).

None of the evidence presented shows Gray recommended Sheeler's termination because of her refusal to speak to Gross or in a hearing before the Board. Rather, Gray testified her termination was due to the criminal charges against her as described in the newspaper article. Sheeler did not rebut the evidence of conduct constituting grounds for dismissal under school policy. *See Peiffer v. Lebanon Sch. Dist.*, 848 F.2d 44, 46 (3d Cir. 1988) (holding termination following a refusal to rebut evidence constituting grounds for dismissal did not constitute penalty for asserting Fifth Amendment rights and not a violation).

Sheeler was presented a choice between silence and presenting a defense. She chose silence without invoking the Fifth Amendment. Sheeler's termination may be in part a consequence of her silence, but her silence did not cause the termination. We affirm the district court's dismissal of any deprivation of rights premised on a Fifth Amendment violation.

**AFFIRMED.**